FOSTER ET AL., EXECUTORS, *v.* UNITED STATES.

No. 189.  Argued January 10, 11, 1938.—Decided January 31, 1938.

*Mr. William P. McCool* argued the cause, and *Messrs. R. Kemp Slaughter, Hugh C. Bickford,* and *C. Clifton Owens* were on the brief, for petitioners.

*Mr. Arnold Raum,* with whom *Solicitor General Reed, Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *George H. Foster* were on the brief, for the United States.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioners' right (as executors) to an income tax refund depends upon whether a dividend paid by the Foster Lumber Company in 1930 is tax exempt as representing corporate earnings accumulated before March 1, 1913.

This dividend is taxable under the Revenue Act of 1928 [1] if paid from earnings accumulated after 1913. The Court of Claims found the dividend taxable. [2]

Petitioners contend that the 1930 dividend was traceable to the Company's pre-1913 accumulations because its post-1913 earnings had been exhausted by a distribution in 1929. The circumstances of the 1929 distribution and the 1930 dividend were:

The Foster Lumber Company was a family corporation, organized in 1896 with a capital stock of $200,000. March 1, 1913, when the federal income tax became effective, the increased value of the company's property and its undistributed profits were more than $3,725,000. Petitioners insist that a distribution of $1,025,000 on October 10, 1929, completely exhausted the $330,578.98 total undistributed profits which had accumulated since March 1, 1913. This 1929 distribution, however, was not a dividend. It was paid by the company to cancel and liquidate five hundred shares of its own $100 par value stock and represented payment of $2,050 per share, the agreed value as of March, 1913. February 11, 1930, the company declared a $225,000 dividend and this refund is sought for the tax paid upon a shareholder's part of this dividend. Between October 10, 1929 (the date of the $1,025,000 stock purchase) and February 11, 1930 (the date of the $225,000 dividend) the company's earnings amounted to only $82,758.17. Petitioners take the position that only $82,758.17 of this $225,000 dividend of 1930 can be taxed, urging that the balance is tax exempt because it must be treated as representing pre-1913 accumulations.

Subsection (a) of § 115 of the Revenue Act of 1928 [3] defines "dividend," for income tax purposes, as "any

[1] c. 852, 45 Stat. 791.

[2] 17 F. Supp. 191; (supplemental opinion) 18 F. Supp. 790.

[3] Revenue Act of 1928, c. 852, 45 Stat. 791, 822.

distribution made by a corporation to its shareholders, . . . out of its earnings or profits *accumulated after February 28, 1913."*

Subsection (b) of this income tax law exempts corporate earnings and profits accumulated before March 1, 1913. This subsection also provides that for income tax purposes all distributions are paid from "the most recently accumulated earnings or profits." The obvious purpose of the provision was to prevent corporations from attributing dividend payments to pre-1913 accumulations to avoid taxes imposed upon profits earned after March, 1913. Petitioners' contention is that the $330,-578.98 earned after 1913, as "the most recently accumulated earnings or profits" was automatically exhausted in part payment of the $1,025,000 stock purchase and thus escaped taxation. In this manner, pre-1913 corporate non-taxable earnings could be used to avoid taxes on corporate profits earned after 1913.

We have previously said that Subsections (a) and (b), *supra,* construed together, disclose legislative purpose that pre-1913 accumulations shall not be distributed "in such a fashion as to permit profits accumulated after that date to escape taxation." [4] Petitioners ask that we now construe these provisions in a way which would facilitate the escape of such profits from taxation and thereby defeat the undoubted purpose of Congress. We are urged so to expand and broaden an exemption granted by Congress as a "concession to the equity of stockholders" [5] that such concession would in reality serve to nullify and defeat the tax on corporate profits earned after 1913. Courts should construe laws in harmony with the legislative intent and seek to carry out legislative purpose. With respect to the tax provisions under consideration, there is no uncertainty as to the legislative purpose to

[4] *Helvering* v. *Canfield,* 291 U. S. 163, 168.

[5] *Lynch* v. *Hornby,* 247 U. S. 339, 346.

tax post-1913 corporate earnings. We must not give effect to any contrivance which would defeat a tax Congress plainly intended to impose. The use of bookkeeping terms and accounting forms and devices cannot 'be permitted to devitalize valid tax laws.

The transaction under which this Company paid $1,025,000 cash for its own stock of $50,000 par value does not fall within Subsections (a) and (b) of § 115. Its character and effect are determined by Subsections (c) and (h) which relate to distributions in complete or partial corporate liquidation.[6]

Subsection (c), governing this stock purchase transaction, directs that ". . . In the case of amounts distributed in partial liquidation . . . the part of such distribution which is *properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) . . . for the purpose of determining the taxability of subsequent distributions . . ."* [7]

This provision of the Revenue Act of 1928 also substantially obtained in the Revenue Act of 1924.[8] Prior even to the 1924 Act, this Court had determined that, for income tax purposes, earnings of a corporation accumulated prior to 1913 are to be considered capital.[9] In the

[6] Cf. *Hellmich* v. *Hellman,* 276 U. S. 233, 237.

[7] Subsection (h) (Revenue Act of 1928, *supra,* at 823): "Definition of partial liquidation.—As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

[8] § 201 (c), c. 234, 43 Stat. 253, 255.

[9] ". . . we are bound to consider accumulations that accrued to a corporation prior to January 1, 1913, as . . . capital, . . ." *Southern Pacific Co.* v. *Lowe,* 247 U. S. 335 (1917). Also, see *Lynch* v. *Turrish,* 247 U. S. 221; *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179 (1917); ". . . what is called the stockholder's share in the accumu-

light of these decisions, Congress obviously intended that corporate funds distributed under the circumstances here shown should be "chargeable to capital account" and that stock purchases of the type here involved should not be considered "for the purpose of determining the taxability of subsequent distributions by the corporation."

Acceptance of petitioners' contention would permit corporate profits accumulated since March, 1913 to escape taxation, contrary to the provisions and purpose of the 1928 Revenue Act. The bookkeeping mingling of corporate earnings and profits made before and after March 1, 1913, does not alter the Act nor can such action render taxable profits non-taxable. In this case, the distribution of $1,025,000 was "properly chargeable to capital account" and was not paid out of profits earned since March 1, 1913.

The $1,025,000, paid for the Company's stock, cannot, therefore, be considered "for the purpose of determining the taxability of subsequent distributions by the corporation" and this purchase of stock did not exhaust any part of the $330,578.98 profits accumulated since 1913. It follows that the total dividend of 1930 received by petitioners' decedent is taxable and the judgment of the Court of Claims is

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.

lated profit of the company is capital, . . ." *Eisner* v. *Macomber,* 252 U. S. 189, 219 (1919). Cf.: ". . . income . . . (received) . . . prior to the adoption of the Sixteenth Amendment . . . had become capital prior to the adoption of the Amendment . . ." *Old Colony R. Co.* v. *Commissioner,* 284 U. S. 557; and ". . . the accumulated profits, as they stood on March 1, 1913, constituted capital of the company . . ," *Helvering* v. *Canfield,* 291 U. S. 163, 167.