BELLE G. LOEWENBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86698. Promulgated May 16, 1939.

*Owen C. Emery, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

846

OPINION.

ARNOLD: Martin Loewenberg's resignation automatically determined the period within which petitioner was obliged to sell her stock to Golo. Even without the benefit of the exact selling price of her stock, petitioner knew that a sale directly to Golo would result in a substantial profit to her. Through her husband she attempted to devise a plan which would prevent the taxation of this entire gain in the year of sale. In their search for an efficacious plan petitioner and her husband submitted their problem to counsel and accountants, as well as the president of Golo. The result of their efforts was the formation of Malvina, which petitioner now asserts was organized

to accomplish a double purpose, namely, protection of herself and her husband in the event of the death of either with respect to probate expenses and proceedings, and the minimizing of her taxes by virtue of the sale to Malvina on the installment basis.

The plan here conceived, that is, a transfer to an intervening entity, has been used before, and its efficacy has been tested in the courts in numerous cases. The success or failure of the taxpayers in the decided cases has turned upon the particular facts involved so that no all embracing rule or principle can be laid down for testing the efforts of this petitioner. But the decided cases have stressed certain factors, in the light of which we may analyze the things done in the instant proceeding. For example, in *Gregory* v. *Helvering*, 293 U. S. 465, the Supreme Court, although recognizing the legal right of a taxpayer to decrease the amount of his taxes by means which the law permits, stressed the fact that the corporation there created had no business or corporate purpose, and was a corporate device, the sole object and accomplishment of which was the transfer of a parcel of corporate shares to the taxpayer.

In *Groves* v. *Commissioner*, 99 Fed. (2d) 179, the Fourth Circuit refused to permit a taxpayer to escape tax upon earnings by organizing two corporations owned and controlled by him in anticipation of diverting to them the income he knew he would earn. The court characterized the contracts there involved as "anticipatory arrangements for the deflection of income to be earned." "Such arrangements" said the court, "must be disregarded for the purpose of taxation." To the same effect were the decisions in the following cases where the courts resolved the issue upon the substance of the transaction and ignored the form: *Foster* v. *United States*, 303 U. S. 118; *Helvering* v. *Gordon*, 87 Fed. (2d) 663; *Steinberger* v. *United States*, 81 Fed. (2d) 1008; *Lucas* v. *Earl*, 281 U. S. 111.

The facts in *Commissioner* v. *Griffiths*, 103 Fed. (2d) 110, more nearly approximate the facts in this proceeding than any other case brought to our attention. Omitting the facts relative to Griffiths' transactions prior to the one in question, it appears that in 1933 he sold certain stock and a claim arising out of the stock to a personally owned corporation on the installment basis. The transaction was handled in this manner upon the advice of counsel that such an arrangement might postpone the time of payment as well as limit the amount of his income taxes on the resulting profit. Griffiths had theretofore considered the organization of an investment corporation, and upon his instructions the corporate vendee was organized and perfected within 24 hours, so that it could receive the cash payment from the sale of the stock. At the time Griffiths authorized the creation of the corporate vendee he knew that

the sale of the stock and settlement of the claim would probably be made within the next two or three days. In holding Griffiths liable for tax upon the entire profit the language of the court is peculiarly apt to the present question. The court stated:

\* \* \* Notwithstanding the argument by respondent, not disputed by the petitioner, that the sale of the stock to the corporation was free from fraud; that the transaction was in no way concealed and therefore not illegal, we are presented with a situation in which the taxpayer and his counsel intentionally formulated a contrivance for the sole purpose of enabling the taxpayer to avoid the payment of tax. \* \* \*

After quoting from *Gregory* v. *Helvering, supra,* the court continued:

It would be difficult to find language more aptly describing the present situation. Here, as there, the sole object was the consummation of a preconceived plan not to organize a corporation for a business purpose, but merely as a step in the contrivance to escape taxation. It performed, as was intended from the beginning, no other function, with the possible exception of the subsequent transaction of some business not inconsistent with the scheme of which it was a part. If speed in perfecting a plan to evade taxation be a commendable attribute, the taxpayer and his counsel would be entitled to great praise. Within 24 hours after respondent had information that his claim against Lay was to be settled for $100,000, the corporation was organized in Delaware, a meeting of the directors held in Chicago, an agreement made between the corporation and respondent by which the money to be received in conformity with the settlement was to be paid to the corporation, and before the setting of the sun on the following day, the money had actually been received by respondent and deposited in the bank to the credit of the corporation, all for the purpose of enabling respondent to escape payment of tax upon the profit thus derived and which otherwise would have belonged to the Government. \* \* \*

This petitioner, like Griffiths, sold her stock upon the installment basis to a corporation created about 24 hours before the time of sale, with the definite intention and upon the advice of counsel that such an arrangement might postpone or limit the amount of her income taxes. Like the corporation organized by Griffiths, Malvina was created for the stated purpose of an investment company, but this petitioner would further justify the existence of Malvina by attempting to show that other considerations entered into its creation. We are not persuaded by petitioner's argument, nor by the elaborate minutes of Malvina, that such corporation was anything more than a contrivance intentionally created for the sole purpose of enabling the taxpayer to avoid a tax which would otherwise be due the Government.

In our opinion the real purpose in creating Malvina was to route through it the transfer of stock that petitioner had agreed to sell to Golo, and thus deflect from her the tax upon the income she would have received during the taxable year but for the intervening transfer

on the installment basis to Malvina. Malvina's receipt of the purchase price of the stock from Golo, investment of the proceeds, and payment of the installment obligations as they matured were but incidental to the real purpose for which it was created. To permit a taxpayer thus to circumvent the tax laws and escape a tax which Congress plainly intended to impose would exalt artifice above reality and deprive the statutory provisions of all serious purpose. We, therefore, sustain the respondent's determination.

Reviewed by the Board.

*Decision will be entered for the respondent.*

VAN FOSSAN, MURDOCK, and LEECH dissent.

