## BEDFORD'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 93.

Circuit Court of Appeals, Second Circuit.

Aug. 8, 1944.

Holt S. McKinney, of New York City (Erwin R. Griswold and Holt S. McKinney, both of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen Goodner, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal involves income taxes of the Estate of Edward T. Bedford, deceased, for 1937, in the amount of $13,887.24 and is taken from a decision of the United States Tax Court sustaining the assessment of the Commissioner of Internal

Revenue. We think the decision of the Tax Court adjudging a deficiency of $13,887.24 should be reversed.

Edward T. Bedford died on May 21, 1931, and Title Guarantee and Trust Company is the executor of his estate and the taxpayer in this proceeding. Among his assets were 3,000 shares of 7% cumulative preferred stock of Abercrombie and Fitch Company (par value $100 per share) having a fair market value at the date of his death of $210,000. Because of business conditions prevailing in the years following Bedford's death Abercrombie and Fitch Company incurred losses, with the result that its surplus account showed a cumulative deficit of $399,771.87 on January 31, 1936. Included in charges against its surplus were amounts aggregating $844,100 which had been capitalized by three stock dividends issued in 1920, 1928 and 1930. Because of the deficit occasioned in the surplus account the Company had been unable for over five years to pay dividends on either its preferred or common stock. Accordingly a plan of recapitalization was proposed and submitted to the stockholders for their consideration and approval and was adopted by them at a meeting held on December 8, 1936, and thereafter put into effect.

In accordance with this plan, the executor of Bedford received in January, 1937, in exchange for its 3,000 shares of 7% cumulative perferred stock ($100 par value), the following:

|  |  | Fair Market Value |
|---|---|---|
| 3,500 | shares new Cumulative Perferred Stock of the Abercrombie and Fitch Company of a par value of $75. per share and an annual dividend of $6. per share | $288,750. |
| 1,500 | shares of the Common Stock of the Abercrombie and Fitch Company of a par value of $1. per share | 15,750. |
| Cash of $15.08 per share....... |  | 45,240. |
| Total Fair Market Value... |  | $349,740. |

Abercrombie and Fitch Company had net earnings after taxes during the taxable year ended January 31, 1937 of $309,073.70.

The stock received by the executor of Bedford in exchange for his former holdings was not subject to taxation because it was received through a reorganization and under the provisions of Section 112(b) (3) of the Revenue Act of 1936:

"No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." 26 U.S.C.A. Int. Rev.Acts, page 855.

There concededly was a recognizable gain to the recipient to the extent of the cash distribution of $45,240 in so far as this cash and the securities received together exceeded the fair value of the shares the decedent held at the time of his death. This is so because of the provisions of Section 112(c) (1) that in the case of money so distributed "gain * * * to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

It appears from the facts we have stated that the value of the stock Bedford held at the time of his death was $210,000 and the fair value of the securities and cash received through the reorganization was $349,740. Accordingly the gain amounted to $139,740 and the $45,240 of cash was taxable as a part of such gain if Section 112(b) (3) be applied. This, as we understand it, all parties concede. But the Commissioner held and successfully contended before the Tax Court that the cash distribution in pursuance of the plan of reorganization had "the effect of a distribution of a taxable dividend" and, that therefore, subdivision (2) of Section 112 (c), and not 112(c) (1), applied. Section 112 (c) (2) provides that where such a distribution "has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess on his ratable share of the undistributed earnings and profits of the corporation cumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property."

We held in Commissioner v. Quackenbos, 2 Cir., 78 F.2d 156; Patty v. Helvering, 2 Cir., 98 F.2d 717, and DeNobili Cigar

Co. v. Commissioner, 2 Cir., 143 F.2d 436, that when earnings are once capitalized by the issue of stock dividends they are no longer earnings but capital, except in cases where the purpose of the transaction is not an honest business purpose but one to avoid taxation. Under those decisions the distribution here was a liquidating dividend and not an ordinary dividend. The slight verbal changes in the provisions of Section 112(c) (2) and Section 115(g), 26 U.S.C.A. Int.Rev.Acts, pages 857, 870, seem to us the equivalent of provisions of prior Revenue Acts. We think our decisions are reasonable interpretations of the purpose of the statute and see no just ground for distinguishing between capital raised by the issue of stock dividends and that obtained through subscriptions pro tanto by the shareholders. Here the purpose of the issue of the stock dividends was to add to the capital and the object of the later reduction of the capital stock through the reorganization was to enable the company to resume the payment of dividends when under the state law they could not be paid because the deficit had wiped out the surplus.

But even if the distributions here, according to the theory of the Commissioner and the Tax Court, might have been taken out of accumulated earnings, these distributions should have been charged to capital rather than surplus. In Foster v. United States, 303 U.S. 118, 58 S.Ct. 424, 82 L.Ed. 700, the Supreme Court held that where a corporation had made distributions in redemption of part of its stock they were to be considered distributions in partial liquidation chargeable to capital account and not distributions of surplus. See also Hellmich v. Hellman, 276 U.S. 233, 237, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379.

The distribution here was a "partial liquidation" because all of the old stock of a par value of $300,000 was surrendered by the decedent for new stock having a par value of only $264,000. The transaction was evidently a distribution by Abercrombie and Fitch Company "in complete cancellation or redemption of a part of its stock." Such a distribution is a partial distribution as defined in Section 115(i) of the Revenue Act, 26 U.S.C.A. Int.Rev. Acts, page 871. Hammans v. Commissioner, 2 Cir., 121 F.2d 4, 7.

The order of the Tax Court is reversed.