**FREEPORT SULPHUR COMPANY**

v.

**UNITED STATES.**

No. 220-54.

United States Court of Claims.

July 16, 1958.

John W. Drye, Jr., New York City, for plaintiff. John J. Costello, New York City, was on the brief.

Jerome Fink, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland and M. Carr Ferguson, Washington, D. C., were on the brief.

LITTLETON, Judge.

Plaintiff sues to recover $96,745.08 with interest, representing an alleged overpayment of its corporate income tax for the calendar year 1947. Plaintiff's claim arises out of the alleged erroneous

disallowance by the Commissioner of Internal Revenue of credits against plaintiff's Federal income tax under the provisions of section 131(a) and section 131(f) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 131(a, f), covering taxes paid to foreign countries.

On December 4, 1946, and for several years prior thereto, plaintiff, a Delaware corporation, owned 94.32 percent of the outstanding shares of stock of another Delaware corporation, the Cuban-American Manganese Corporation. Cuban-American Manganese Corporation, in turn, owned all the issued and outstanding stock of Cuban Mining Company, a corporation organized and existing under the laws of the Republic of Cuba. On December 4, 1946, Cuban-American was dissolved, and plaintiff, by virtue of its 94.32 percent ownership of the stock of Cuban-American, received 94.32 percent of the outstanding capital stock of the Cuban Mining Company.

Subsequent to the dissolution of Cuban American, plaintiff purchased additional shares of Cuban Mining stock and by September 20, 1947, plaintiff owned 9,653 $177/190$ of the 10,000 issued and outstanding shares of the Cuban company.

Because the manganese ore reserves being mined by Cuban Mining were becoming exhausted, plaintiff, as principal stockholder, decided that the company should be dissolved and, accordingly, pursuant to a plan of liquidation, all business activity at Cuban Mining ceased. At that time Cuban Mining had capital of $500,000 and at the same time plaintiff's capital investment in the Cuban company's stock was $488,484.50. Likewise, at that time, Cuban Mining had accumulated earnings and profits in the amount of $546,170.64.

In connection with the liquidation and dissolution of Cuban Mining in 1947, plaintiff received two cash distributions in partial redemption of its shares of Cuban Mining Company stock. The first distribution was made on September 29, 1947, in the amount of $30 per share or a total of $289,617.95. The Cuban tax authorities treated this distribution as a dividend paid from the surplus of Cuban Mining, and taxes in the amount of $16,797.84 were withheld by Cuban Mining from the amount otherwise due plaintiff, and were paid to the Republic of Cuba. The net amount of the distribution of September 29, 1947, received by plaintiff after the deduction of the Cuban taxes, was $272,820.11.

In October 1947, by appropriate corporate action, the par value of Cuban Mining Company stock was reduced from $50 a share to $5 per share. On October 31, 1947, plaintiff received its second cash distribution in the process of the liquidation of Cuban Mining, amounting to $45 per share and totaling $434,426.92. The entire amount of this distribution was paid by Cuban Mining to plaintiff inasmuch as under the tax laws of Cuba, this distribution was not regarded as a payment out of the surplus of Cuban Mining, and no current dividend tax was applicable.

The total amount received by plaintiff from the two distributions (not taking into account the Cuban dividend tax withheld on the first distribution) was $724,044.87. As a result of the two distributions, plaintiff received $235,560.37 in excess of its $488,484.50 capital investment in the stock of the Cuban company. In its 1947 Federal income tax return plaintiff treated both distributions as a sale of capital assets through a distribution in complete liquidation of a corporation under section 115 (c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 115'c), and therefore also treated the $235,560.37 excess over its tax basis as a long term capital gain for tax purposes. After computing its income taxes on this basis, plaintiff then claimed foreign tax credits as follows: (1) under section 131(a) of the Code, plaintiff claimed a foreign tax credit for the $16,797.84 dividend tax paid to the Republic of Cuba by Cuban Mining; (2) under section 131(f) of the Code, plaintiff claimed an additional foreign tax credit in the amount of $40,235.25 for a portion of the Cuban income taxes deemed to have been paid

by Cuban Mining on its aggregate accumulated earnings and profits through 1947. The amount of the latter credit was computed on the assumption that the first distribution in the amount of $289,617.95 represented a distribution of accumulated earnings and profits of the Cuban company whereas the balance or other distribution ($434,426.92) had represented a return of the original capital of the company which had never been subject to tax.

After auditing plaintiff's 1948 income tax return, the Commissioner of Internal Revenue determined that the capital gain realized by plaintiff in the two 1948 distributions should be reduced by the amount of the $16,797.84 Cuban dividend tax actually withheld from the first distribution by the Cuban company and paid to the Republic of Cuba. However, the Commissioner disallowed in their entirety both foreign tax credits claimed by plaintiff against its taxable net income for 1947. Accordingly, the Commissioner, over plaintiff's protest, assessed additional income tax against plaintiff in the amount of $52,833.60 plus accumulated interest thereon of $10,909.05 on August 30, 1951. The assessment was paid in full by plaintiff on August 31, 1951.

On December 7, 1951, plaintiff filed a timely claim for refund of income tax for 1947 in the amount of $63,742.65 based on the ground that the foreign tax credits claimed by plaintiff and disallowed by the Commissioner were allowable under the Code. On January 30, 1953, plaintiff filed a timely amended claim for refund of income tax for 1947 on the same basis as the original claim except that plaintiff claimed that the entire amount of the accumulated earnings and profits of the Cuban company, i. e., $546,170.64, had been included in the two distributions in 1947 (the two distributions had totaled $724,044.87), rather than the fraction ($289,617.95) of such accumulated earnings and profits which had been claimed in the original claim for refund. As a result of this amendment, the entire Cuban income

tax in the amount of $76,194.62 deemed to have been paid by the Cuban company on its total earnings and profits (amounting to $546,170.64) was claimed by plaintiff as a foreign tax credit under section 131(f) of the Code. The increased foreign tax credit claimed in the amended claim for refund, resulted in an increased refund claim in the amount of $96,745.08, plus interest. (Cuban income tax, plus the 1947 Cuban dividend tax withheld at source.)

On June 13, 1952, plaintiff's original claim for refund was rejected entirely by the Commissioner. No action has been taken by the Commissioner with respect to the amended claim for refund filed on January 30, 1953.

Section 131 of the Internal Revenue Code of 1939 relative to foreign tax credits provides in subsection (a) (1) that domestic corporations shall be credited with any income, war-profits, and excess-profits taxes paid or accrued within the taxable year to any foreign country or to any possession of the United States. Subsection (f) (1) of section 131 of the Code provides that a domestic corporation owning the majority of the voting stock of a foreign corporation "from which it receives dividends in any taxable year", shall be "deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid or deemed to be paid by such foreign corporation to any foreign country" upon the accumulated profits of the foreign corporation from which the dividends were paid, which the amount of the dividends bears to the amount of the accumulated profits.

It is plaintiff's contention that in making the liquidating distributions in 1947 in the total amount of $724,044.87, the Cuban company first distributed the full amount of its accumulated earnings and profits (as of 1947) in the amount of $546,170.60, before redeeming its capital stock; that under the provisions of section 115(a) of the Code plaintiff had received "dividends" to the extent of the $546,170.60 of earnings and profits available for such purpose, and that under

section 115(b) plaintiff must be "deemed to have paid" the same proportion of income taxes paid or deemed to be paid by the Cuban company upon such accumulated profits from which the dividends or distributions were paid.

If the distributions made to plaintiff in 1947 constituted "dividends", then plaintiff was entitled to a credit against its capital gains tax for the statutory amount of the Cuban income and dividend taxes paid by its foreign subsidiary, Cuban Mining Company. The term dividends is defined in section 115 of the Internal Revenue Code. As noted by the court in the recent decision in Atlantic City Electric Company v. United States, D.C., 161 F.Supp.811, that section of the Code presents serious problems in interpretation. The issue in that case was whether or not the plaintiff, a public utility company, was entitled to the benefits of the dividend paid credit under section 26(h) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 26(h) in connection with certain redemption bonuses paid by the plaintiff to its stockholders upon the retirement of plaintiff's preferred stock. In that case the court held that although the definition of the word "dividend" in section 115(a) of the Code was sufficiently broad to make the distribution in suit a dividend for all purposes, including the purpose of the section 26(h) deduction, the courts had held that section 115(c) imposed a limitation on that definition where the dividend was a distribution in liquidation and that the payment in the hands of the distributee-shareholder did not have the status of a dividend. In the Atlantic case, the court had to consider the status of a distribution in liquidation from the standpoint of the distributing corporation, and it concluded that such a distribution was not a dividend within the meaning of the dividend paid credit section 26(h) of the Code.

▆ In the instant case the plaintiff is the distributee-shareholder in receipt of distributions made in liquidation of a foreign corporation in which plaintiff owned nearly all of the issued and outstanding stock. The foreign corporation had a large accumulated surplus of earnings and profits from which it could have paid regular dividends, and the foreign corporation had paid taxes to Cuba on the income which was so accumulated. As in the Atlantic case, supra, we are faced with the decisions of the Supreme Court and other courts that the definition of "dividends" in section 115(a) is not generally applicable to distributions made in liquidation. Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544; Foster v. United States, 303 U.S. 118, 58 S.Ct. 424, 82 L.Ed. 700. Section 131(f) of the Code gives no more clue to the congressional intention behind the use of the word "dividends" therein than did the language of section 26(h) in the Atlantic case. However, the following circumstance may be helpful in ascertaining the intention in the instant case. If the distribution made by the Cuban corporation had been made as an ordinary dividend on the Cuban company's stock, the plaintiff distributee-shareholder would have had to pay a much higher rate of tax on the whole distribution, to the extent that it was out of earnings and profits, as ordinary income and would have been entitled to the foreign tax credit provided in section 131(f) of the Code. However, the taxes which plaintiff would have had to pay on such regular dividends as ordinary income, even with the benefit of the foreign tax credit, would have been much more than the capital gains tax payable on the dividend as a liquidating distribution without the benefit of any foreign tax credit. Accordingly, we are of the opinion that Congress did not intend to give a distributee-shareholder of a liquidating foreign corporation both the benefit of the lower capital gains rate admittedly applicable to liquidating dividends under section 115(c) of the Code, and also the benefit of foreign tax credits provided for in section 131(f) of the Code.

▆ In view of the above circumstances, and in the light of our holdings in the Atlantic case and in the related

case of Idaho Power Company v. United States, D.C., 161 F.Supp. 807, we conclude that the distributions to plaintiff in the instant case were not "dividends" within the meaning of section 131(f) of the Code.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge (concurring).

Apparently the Cuban Mining Company did not pay to Cuba any taxes on the distribution of accumulated earnings, except the $16,797.84 credit which has been allowed. Hence, it is not entitled to any further credit for taxes on earnings paid to a foreign country.