**FOWLER HOSIERY COMPANY, Inc.,** Petitioner,

v.

**COMMISSONER OF INTERNAL REVENUE,** Respondent.

No. 13506.

United States Court of Appeals
Seventh Circuit.

April 13, 1962.

Leo J. Schwartz and Arthur S. Freeman, Chicago, Ill., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Harold C. Wilkenfeld, Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Petitioner, Fowler Hosiery Company, Inc., appeals from a decision of the Tax Court, 36 T.C. 201, No. 20, affirming a deficiency in the amount of $205,850.70 in Fowler's income tax for the year of 1955. The Tax Court sustained the Commissioner of Internal Revenue's determination that a $1,500,000 cash distribution (which Fowler received from its wholly owned Canadian subsidiary, Fowler Hosiery Company of Canada, Limited) was a distribution in partial liquidation within the meaning of Section 346(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 346(a); and that the distribution was not a dividend within the meaning of Section 902(a) of the 1954 Code, 26 U.S.C. § 902(a) for purposes of a credit for foreign taxes allowable under that section.

The controlling facts are not in dispute. Taxpayer, a Wisconsin corporation with its principal office now in Chicago (although until recently in Milwaukee, Wisconsin), was, until July, 1955, engaged in the manufacture and sale of hosiery, sleepwear, underwear and lingerie. In addition to its Canadian subsidiary (Fowler of Canada) taxpayer also had six wholly owned United States subsidiary corporations.

An agreement dated July 1, 1955 was made between Fowler and Julius Kayser & Co., a New York corporation, whereby taxpayer and its six United States subsidiaries would sell to Kayser all of their inventories, supplies, prepaid expenses, accounts receivable, patents, trademarks, licenses, and goodwill, including the corporate name "Holeproof." Pursuant to this agreement Fowler of Canada

would sell its inventory, prepaid expenses, accounts receivable, and goodwill to Julius Kayser & Co., of Canada, Limited, a wholly owned subsidiary of Kayser. Simultaneously with these sales and pursuant to the agreement, taxpayer and its United States subsidiaries and Fowler of Canada would lease to Kayser and to Kayser of Canada, all of their fixed assets consisting of land, buildings, machinery, and equipment for a five-year period commencing July 1, 1955 and ending June 30, 1960.

At a special meeting on September 6, 1955, taxpayer's stockholders adopted resolutions authorizing the execution of the proposed contract and leases with Kayser and Kayser of Canada. Taxpayer's stockholders also adopted a resolution to dissolve the corporation. They further resolved that the corporation's name should be changed from Holeproof Hosiery Company to Fowler Hosiery Company, Inc.

At a special meeting of the stockholders of Fowler of Canada on September 6, 1955 the stockholders adopted resolutions authorizing the execution of the contract and lease with Kayser of Canada. On the same day, at a separate meeting, the directors of Fowler of Canada adopted resolutions approving and ratifying the sale to and the lease with Kayser of Canada. Neither the stockholders nor directors of Fowler of Canada took any action to dissolve Fowler of Canada.

On December 20, 1955 the stockholders and directors of each of taxpayer's six wholly owned United States subsidiaries adopted resolutions of complete liquidation and thereafter each of these corporations was liquidated.

The agreement of July 1, 1955 was closed September 9, 1955 when Kayser paid for its acquisition of taxpayer's non-fixed assets. On September 9, Fowler of Canada received $1,777,680.83 in cash for the assets it sold to Kayser of Canada. Thereafter, Fowler of Canada was engaged in no business other than the collection of rents from the lease of its fixed assets.

In December, 1955 Fowler of Canada declared and paid to taxpayer a dividend of $1,500,000. Prior to this payment, Fowler of Canada had accumulated earnings and profits of approximately $2,200,-000. As of December 31, 1955, after the distribution, Fowler of Canada's books showed accumulated earnings and profits of $700,000.

In its federal income tax return for 1955, taxpayer reported the $1,500,000 distribution received from Fowler of Canada as an ordinary dividend subject to tax at the 52 per cent rate. The tax attributable thereto was $780,000 and the return claimed a foreign tax credit of $744,727.29, consisting of $75,000 for taxes actually paid, claimed under Section 901 of the Internal Revenue Code of 1954, and $669,727.29 for taxes deemed to have been paid, claimed under Section 902 of the Internal Revenue Code of 1954.

The Commissioner, in the statutory notice of deficiency, determined that the $1,500,000 distribution was received by taxpayer in partial liquidation of Fowler of Canada and that it resulted in a long-term capital gain of $1,117,960.25. A foreign tax credit of $75,000 under Section 901 of the Internal Revenue Code of 1954 was allowed and no credit was allowed under Section 902.

### I.

Taxpayer first contends that the $1,-500,000 payment was an ordinary dividend and not a distribution in partial liquidation within the meaning of Section 346 of the 1954 Code [1] because (1) the

1. "§ 346. Partial liquidation defined
   "(a) *In general.*—For purposes of this subchapter, a distribution shall be treated as in partial liquidation of a corporation if—
   "(1) the distribution is one of a series of distributions in redemption of all of the stock of the corporation pursuant to a plan; or

   "(2) the distribution is not essentially equivalent to a dividend, is in redemption of a part of the stock of the corporation pursuant to a plan, and occurs within the taxable year in which the plan is adopted or within the succeeding taxable year, including (but not limited to) a distribution which meets the requirements of subsection (b). * * *"

distribution was wholly from accumulated earnings and profits and therefore was essentially equivalent to a dividend as defined in Section 316(a) of the Code; [2] (2) there was no redemption of all or a part of Fowler of Canada's stock in connection with the distribution; and (3) the distribution was not made pursuant to a plan of complete or partial liquidation adopted by Fowler of Canada on or prior to the date of distribution.

The opinion of the Tax Court answers taxpayer's first contention completely and adequately. Since we are in agreement with the opinion and decision of the Tax Court on this point it would serve no purpose to do more than briefly summarize that court's findings and conclusions.

■ The Tax Court acknowledged that "the distribution, to qualify under Sections 346(a) (1) or (2), must be made pursuant to a plan" but found no statement in the code or regulations that the plan must be one so denominated in a formal resolution of the stockholders. Accordingly, the court held that a "plan" has been established if the taxpayer has adopted formally or informally "a plan which *as a matter of fact* shows itself to constitute a plan of complete liquidation or redemption of a part of the stock. * * * " (Emphasis supplied.)

■■ The court further held that it was immaterial that no stock was actually redeemed by Fowler of Canada; since taxpayer was the sole stockholder its interest in Fowler of Canada was the same whether or not any portion of the stock was retired. Redemption of stock within the meaning of Section 346(a) does not necessarily require the physical surrender or cancellation of the stock. Where there is but one stockholder of a corporation which distributes a substantial portion of its assets after termination of its business activities, the question whether the formality of a surrender of stock must be observed is one of fact. The Tax Court correctly resolved this question in favor of the Commissioner.

■ The court, applying what we think were the proper legal criteria to the circumstances surrounding the distribution, determined as a fact that the distribution was not an ordinary dividend or the essential equivalent to a dividend but rather a planned distribution in partial liquidation. We think the Tax Court correctly determined, under the facts of the case, that the payment received by the taxpayer in 1955 from its Canadian subsidiary was a distribution in partial liquidation.

## II.

■ Taxpayer's alternative contention is that even if the $1,500,000 distribution must be characterized as a distribution in partial liquidation, nonetheless the distribution was a dividend within the meaning of Section 902(a) of the 1954 Code [3] and therefore taxpayer is entitled to the same credit for taxes deemed to have been paid as if the distribution were an ordinary dividend. Taxpayer's authority is Associated Telephone and Telegraph Co. v. United States, D.C., 199 F. Supp. 452.

In opposition the Commissioner argues that "dividends" and "distributions in liquidation" are mutually exclusive

---

2. "§ 316. Dividend defined

"(a) *General rule.*—For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders—

"(1) out of its earnings and profits accumulated after February 28, 1913, or * * *."

3. "§ 902. Credit for corporate stockholder in foreign corporation

"(a) *Treatment of taxes paid by foreign corporation.*—For the purposes of this subpart, a domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States, on or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits."

terms; that judicial authority and administrative practice establish that the definition of dividends in Section 316(a) is not generally applicable to distributions in liquidation; and that absurd and unjust results would follow if dividends as used in Section 902(a) were read to include distributions in liquidation. The Commissioner relies upon Freeport Sulphur Co. v. United States, 163 F.Supp. 648, 143 Ct.Cl. 111, decided by the Court of Claims.

The Tax Court upheld the Commissioner's determination that taxpayer be allowed no credit under Section 902(a) for foreign taxes deemed to have been paid. The court approved the result reached in Freeport. The decision in Associated, contrary to the holding in Freeport, was decided after the Tax Court's opinion and was not available for that court's consideration.

We agree with taxpayer's contention that the $1,500,000 distribution comes within the literal definition of a dividend as expressed in Section 316(a) since the distribution did not exceed earnings and profits accumulated by Fowler of Canada. It does not follow, however, that the distribution must be considered a dividend within the meaning of Section 902(a).

The Supreme Court, in Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544, was confronted with the question whether every corporate distribution out of earnings and profits was necessarily a dividend by virtue of the broad definition of dividend contained in Section 201(a) of the Revenue Act of 1918 (the predecessor of Section 316(a)), even though such distribution was in liquidation of a corporation. The Court held that while Section 201(a) standing alone would apparently include distributions in liquidation, nevertheless, it must be read in harmony with Section 201(c) of the Revenue Act of 1918 (the predecessor of Section 331(a)) [4] which provided that

distributions in liquidation would be treated as payments in exchange for stock. The Court concluded that Section 201(c) controlled.

Similarly, in the instant case the definition in 316(a) must be read not in isolation but in context with the entire Code— particularly with Sections 346(a) and 902(a) and in harmony with the intent of Congress.

Since we have determined that the $1,500,000 distribution was a distribution in partial liquidation within the meaning of Section 346(a) regardless of the definition of dividend in Section 316(a), the taxpayer has the burden to demonstrate that the word dividend in Section 902(a) should include a distribution in partial liquidation.

■ Having in mind that a distribution in liquidation is taxed at the capital gains rate, the issue here is whether Congress, in drafting Section 902(a), intended that a corporation be allowed the benefit of both the capital gains rate and a foreign tax credit when it receives a "dividend" which is determined to be a distribution in partial liquidation.

In attempting to determine whether Congress intended that the word dividend in Section 902(a) should include distributions in liquidation, both taxpayer and Commissioner have submitted detailed analyses of the legislative history of Section 902(a) and related current and superseded sections of the Internal Revenue Code. A similar analysis was undertaken by the court in Associated.

In our view a discussion of the legislative history would serve only to lengthen this opinion. We have examined the historical development of the various sections and cases interpreting these sections and find them inconclusive. Certain sections of the code and decisions interpreting them seem to indicate that when the word dividend appears it is in-

4. "§ 331. Gain or loss to shareholders in corporate liquidations
   "(a) General rule.—
   "(1) Complete liquidations.—Amounts distributed in complete liquidation of a

corporation shall be treated as in full payment in exchange for the stock.
* * *"

tended to include liquidating distributions; other sections and cases indicate an intent that the terms be mutually exclusive. This inconsistency is not surprising since the congressional intent for the meaning of the word quite properly may change from section to section and from time to time.

We have found only one item which sheds light on what meaning Congress intended for the word dividend as used in Section 902(a). The House Ways and Means Committee in 1950 made the following comment upon the crediting of foreign taxes, deemed to have been paid on dividends received by a corporation from its foreign subsidiary, against its corporate income tax:

> "Even if the liquidation or merger of a foreign subsidiary corporation does not qualify as taxfree, the domestic parent corporation is taxed on its gain only at long-term capital gain rates, including that part of the gain which is attributable to earnings of the foreign subsidiary which have been accumulated free of United States income tax. This procedure may not always be profitable, however, since a credit for foreign income taxes is not allowed against the capital gain tax." [5]

The proposed tax measure to which the comment was addressed was not enacted. The gloss, however, represents the understanding of the revenue law which we are interpreting by a specialized congressional committee dealing with tax matters. Its views, therefore, are entitled to considerable weight. Tri-Lakes S.S. Co. v. Commissioner of Internal Revenue, 6 Cir., 146 F.2d 970, 973.

The Committee report is the only direct indication of congressional intent for the meaning of dividend in Section 902(a). Indirect support for the Commissioner's position can be demonstrated by considering the inequities which would result if taxpayer's contention were to be adopted.

In the case of a domestic subsidiary of a domestic corporation, the federal government taxes the profits of the subsidiary as they are earned. In the case of a foreign subsidiary, however, the government does not tax the profits as they are earned; United States' revenue from such foreign sources may be derived only from a tax on dividends when and if the dividends are paid to the domestic parent. The United States cannot prevent the accumulation of profits by the foreign subsidiary and if no dividends are paid the only opportunity to tax the domestic parent would be upon the partial or complete liquidation of the foreign subsidiary at which time the liquidating distributions would be taxed at capital gains rates.

Since United States capital gains rates are generally lower than foreign tax rates on corporate income, if the Section 902 (a) foreign tax credit is allowed for distributions in liquidation, a foreign subsidiary could accumulate profits, then dissolve, with the result that the tax credit may be larger than the capital gains tax owed by the domestic parent. This is patently illustrated by the instant case because if taxpayer's contention is upheld, then all United States' taxes on its Canadian subsidiary would be avoided. Such a tax avoidance would discriminate against American corporations with domestic subsidiaries—a result which we believe Congress did not intend.

Accordingly, we agree with the views expressed by the Tax Court in the instant case and the result reached by the Court of Claims in Freeport. The holding in Associated is rejected inasmuch as we believe the District Court placed undue emphasis on Section 316(a), which we have found must be read in context with the other sections of the code, and also on that area of legislative history which we have found inconclusive.

The decision of the Tax Court is affirmed.

---

5. The Committee was reporting on proposed Section 206 of the Revenue Bill of 1950, H.Rep. No. 2319, 81st Cong., 2d Sess. 52; 1950–2 Cum.Bull. 380, 419–420.