Alexander Hamilton Rice v. Commissioner.
Rice v. Commissioner
Docket No. 110067.
United States Tax Court
1942 Tax Ct. Memo LEXIS 30; 1 T.C.M. (CCH) 245; T.C.M. (RIA) 42663; 12/18/1942
*30 On October 2, 1937 a corporation organized in 1925 distributed nine-elevenths of its net worth to the estate of petitioner's wife in exchange for nine-elevenths of the outstanding shares of the corporation. In 1938 the corporation liquidated, distributing the remainder of its assets to petitioner, who owned the remaining two-elevenths of the outstanding shares. Held, the 1937 distribution in excess of nine-elevenths of the paid-in capital of the corporation was out of accumulated earnings and profits and since such excess exhausted those earnings and profits and the corporation had no subsequent earnings and profits, no part of the 1938 distributions to petitioner constituted taxable dividends, but represented a return of capital. Helvering v. Jarvis, 123 Fed. (2d) 742, affirming William D. P. Jarvis, 43 B.T.A. 439, followed. Earle W. Carr, Esq., 709 Shawmut Bank Bldg., Boston, Mass., for the petitioner. J. T. Haslam, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax against petitioner for the calendar year 1938 in the amount of $60,119.59. Petitioner *31 claims an overpayment of income tax for the year of $67,116.44. The only issue for our decision is whether a distribution in partial liquidation on October 2, 1937, by The Miramar Corporation so exhausted its earnings and profits that distributions to petitioner in 1938 were made out of paid-in capital or paid-in surplus. Other issues raised by the pleadings have been waived by petitioner. Findings of Fact We adopt as our findings of fact the stipulation of the parties. In so far as material to the issues it is substantially as follows: The petitioner is an individual citizen of the United States residing at "Miramar", Bellevue Avenue, Newport, Rhode Island. The petitioner filed his return on the cash basis for the calendar year 1938 with the Collector of Internal Revenue at Providence, Rhode Island, on March 15, 1939. The tax shown to be due on the return was $177,284.33 which was paid in equal quarterly installments. On August 28, 1941, an additional amount of $3,635.45 was paid as a deficiency for the year 1938. In the return dividends received were reported in the amount of $113,004.80, which included a distribution of $24,000.00 received from The Miramar Corporation (hereinafter *32 referred to as the corporation) on October 15, 1938, and a liquidating dividend of $31,027.80 received from the corporation on December 29, 1938. Respondent determined that the petitioner should have reported a liquidating dividend of $131,680.42, and, in accordance with that determination, increased the reported income by the addition thereto of $100,652.62, the difference between $131,680.42 and $31,027.80. (Respondent now concedes that the computation of $131,680.42 was erroneous and should have been $128,880.42.) The corporation was incorporated under the laws of Delaware on November 30, 1925, with an authorized capital stock of 1,000 shares having a par value of $100 each. On December 21, 1925, the petitioner transferred 25,000 ordinary shares of British-American Tobacco Company, Limited, to the corporation in exchange for 200 shares of its stock and the petitioner's wife, Eleanor Elkins Rice, transferred 100,000 ordinary shares of British-American Tobacco Company, Limited, to the corporation in exchange for 800 shares of its stock. The shares so transferred were entered on the books of the corporation at $1,420,850 which was believed to be the income tax basis of the shares *33 to the transferors. The corporation credited capital stock account with $100,000 and paid-in surplus with $1,320,850. The value of the said 125,000 ordinary shares of British-American Tobacco Company, Limited, stock on December 21, 1925, was $3,468,750. On September 20, 1926, the authorized capital stock of the corporation was increased to 2,000 shares having a par value of $100 each. In January, 1927, the petitioner's wife, Eleanor Elkins Rice, transferred 10,875 ordinary shares of British-American Tobacco Company, Limited, having a value of $259,640, to the corporation in exchange for 100 additional shares of its stock. The shares so transferred were entered on the books of the corporation at $90,509.08 which was believed to be their income tax basis to the transferor. The capital stock account was credited with $10,000 and paid-in surplus account was credited with $80,509.08. These accounts on the books of the corporation were thereby increased to $110,000 and $1,401,359.08, respectively. Eleanor Elkins Rice died July 13, 1937. At the date of her death she owned 900 shares and the petitioner owned 200 shares of the stock of the corporation, acquired in the manner above set forth, *34 being all of the issued stock of the corporation. On October 1, 1937, at 10:00 A.M., by appropriate corporate action, the authorized capital stock of the corporation was reduced to 1,100 shares having a par value of $100 each and its certificate of incorporation was amended to provide that shares of stock retired pursuant to law should not be reissued. On October 1, 1937, at 12 M., by appropriate corporate action, the outstanding capital stock of the corporation was reduced to 200 shares having a par value of $100 each and its certificate of incorporation was amended to reflect such reduction. On October 2, 1937, the assets of the corporation consisted of $74,627.29 in cash and securities with an actual value of $5,700,600. On October 2, 1937, the executors under the will of Eleanor Elkins Rice surrendered to the corporation for cancellation 900 shares of its capital stock and received therefor securities with a book value of $1,334,455.30 and cash in the sum of $6,545.46, the latter amount being received on December 28, 1937. The actual value of the securities received by the executors under the will of Eleanor Elkins Rice was $4,647,625. The basis of the 900 shares of the corporation *35 stock to Eleanor Elkins Rice was $1,198,859.08. The corporation recorded this partial liquidation on its books by charging $90,000 to capital stock account and $1,244,455.30 to surplus. The cash payment of $6,545.46 made December 28, 1937, to complete the liquidation distribution was erroneously treated on the books as an ordinary dividend paid. The partial liquidation distribution made to the executors under the will of Eleanor Elkins Rice in respect of their nine-elevenths of the stock of the corporation was intended to be nine-elevenths of the net worth of the corporation after taking into account accrued and contingent liabilities. At the time of the partial liquidation distribution the respondent had asserted against the corporation Federal income tax deficiencies for the years 1933 to 1936 due to disallowance of credits claimed for British taxes withheld from dividends received by the corporation. The validity of these assessments was finally determined in the case of . In determining the partial liquidation distribution made to the executors under the will of Eleanor Elkins Rice, a reserve was set up for *36 the taxes referred to above, for the 1937 Federal income tax on income received up to October 2, 1937, and for other items. This reserve was in the amount of $72,031.94, as follows: Corp. Trust Co
$ 100.00
State of Delaware
2.00
Ballard, Spahr, Andrews & Ingersoll
(tax litigation)
5,240.00
Collector of Internal Revenue (alleged
deficiencies yrs. 1933 to 1936)
35,648.40
Interest on above deficiencies
1,199.20
1937 income tax
29,048.36
Miscellaneous contingencies
793.98
$72,031,94
An exact nine-elevenths of the securities owned by the corporation at the time of the partial liquidation was: 157,193 3/11 shares British-American Tobacco Co., Ordinary. 19,648 7/11 shares Tobacco Securities Trust Co., Ltd., Ordinary. 19,648 7/11 shares Tobacco Securities Trust Co., Ltd., Deferred. By agreement the executors under the will of Eleanor Elkins Rice received in partial liquidation instead of an exact nine-elevenths of each block of securities the nearest amount in even thousands below nine-elevenths at book value and the difference was made up in cash. The amount of cash received was determined as follows: THE MIRAMAR CORPORATION
Assets
Cash
$ 74,627.29
Investments
1,636,405.58
Totals
$1,711,032.87
Capital and Surplus
Capital stock
$ 110,000.00
Surplus
1,601,032.87
$1,711,032.87
Net worth, per balance sheet
$1,711,032.87
Less: Reserve for contingencies
72,031.94
Adjusted net worth after provision for all known obligations
$1,639,000.93
9/11 X $1,639,000.93 = $1,341,000.76
*37 Assets distributed in settlement for 900 shares of Miramar Corporation stock surrendered: 157,000 shares British-American Tobacco Co., Ltd., Ordinary
$1,249,978.13
19,000 shares Tobacco Securities Trust Co., Ltd., Ordinary
72,741.60
19,000 shares Tobacco Securities Trust Co., Ltd., Deferred
11,735.57
Total book value of securities
$1,334,455.30
Cash
6,545.46
$1,341,000.76
The corporation kept its books and made its Federal income tax returns on the calendar year, cash basis. On December 31, 1936, the accumulated earnings and profits of the corporation amounted to $169,780.56. The net income of the corporation for the calendar year 1937, without deduction for Federal income taxes or dividends, was $192,688.80, of which $190,923.72 was allocable to the period preceding the partial liquidation and $1,765.08 to the succeeding period. During the calendar year 1937, the corporation paid Federal income taxes in the amount of $62,628.49, of which $27,688.49 was paid prior to October 2, 1937, and $35,000 was paid subsequent to that date. During the year 1937 the corporation paid dividends as follows: Prior to October 2, 1937, $133,402; subsequent to October 2, 1937, $4,021.62. *38 At the time of the partial liquidation on October 2, 1937, the corporation's capital stock account was $110,000, the paid-in surplus account on the basis of book value was $1,401,359.08, and accumulated earnings and profits were $199,673.69. The actual value of the paid-in surplus account, on the basis of the value of securities at the time of their transfers to the corporation, was $3,618,390. The earnings and profits of the corporation for the period October 2, 1937 to December 31, 1937, were minus $37,256.54. On October 15, 1938, petitioner received a distribution from the corporation in the amount of $24,000. The earnings and profits of the corporation for the year 1938 were minus $2,991.37. The respondent contends that at December 29, 1938, the accumulated earnings and profits of the corporation were $128,880.42, computed as follows: Earnings and profits to Oct. 2, 1937.
$199,673.79
Less: Cash paid Dec. 28, 1937 on ac-
count of partial liquidation of Oct.
2, 1937
6,545.46
Balance
$193,128.33
Less: Loss from Oct. 2, 1937 to Dec.
31, 1937
37,256.54 *
Balance Dec. 31, 1937
$155,871.79
Distribution Oct. 15, 1938
24,000.00
Balance
$131,871.79
Less: Loss from Jan. 1, 1938 to Dec.
29, 1938
2,991.37
Accumulated earnings and profits at
Dec. 29, 1938
$128,880.42
*39 The amount of accumulated earnings and profits of $128,880.42, was computed by deducting from income the payments made for the discharge of liabilities existing at October 2, 1937, for which the reserve of $72,031.94 was established. The petitioner contends that at least nine-elevenths of the earnings and profits of $199,673.79 of the corporation on October 2, 1937, were distributed in the partial liquidation on that date and that the balance was exhausted by the deficit in earnings and profits for the balance of the year, so that there were no earnings or profits on October 15, 1938, or on December 29, 1938. On December 15, 1938, the corporation adopted a plan of complete liquidation. Petitioner, as sole stockholder of the corporation, assented to the plan and turned in his shares for cancellation in return for which he received, on December 29, 1938, all the assets of the corporation consisting of securities with a book value of $301,950.28 and cash in the sum of $9,266.57. The securities received by petitioner on the complete liquidation of the corporation had an actual value on December 29, 1938, of $887,488. The basis to petitioner of his stock of the corporation was $312,500. *40 The complete liquidation of the corporation qualified under section 112 (b) (7) of the Revenue Act of 1938 and petitioner duly elected thereunder to have his gain realized under said liquidation taxed as a dividend and limited to the accumulated earnings and profits of the corporation. Opinion VAN FOSSAN, Judge: The question raised for decision is whether, under the stipulated facts, the distributions to petitioner in 1938 were out of capital or were from earnings and profits of the distributing corporation. If the latter, the distributions were taxable as dividends. This question has been decided in petitioner's favor on comparable facts in , affirmed with opinion, CCA-4, . Respondent concedes the pertinency and applicability of the decision in the Jarvis case but argues that the Board of Tax Appeals and the Circuit Court of Appeals erred in that case in not holding that the situation there presented was controlled by . The scope of the Foster decision was specifically considered, both by *41 the Board of Tax Appeals and the Circuit Court of Appeals in the respective opinions in the Jarvis case and that case clearly distinguished. We adhere to the position so set forth and, accordingly, hold for the petitioner. This conclusion results from the following course of reasoning: At the time of the partial liquidation by the corporation on October 2, 1937, the capital stock account was $110,000, its paid-in surplus was of an actual value of $3,618,390, and its earnings and profits were $199,673.69. It distributed to petitioner's wife as a result of the partial liquidation property and cash of an actual value of $4,654,170.-46, representing nine-elevenths of the net worth of the corporation. This distribution reduced the capital by nine-elevenths. Under the Jarvis decision, $90,000 of the sum so distributed was properly chargeable to the capital stock account and $2,960,500.91 to paid-in surplus. The remainder, $1,603,669.55 was chargeable to earnings and profits to the extent that there were earnings and profits available. Since the available earnings and profits were but $199,673.69, it is obvious that there were no remaining earnings and profits after the distribution *42 of October 2, 1937. There being no earnings from operations after October 2, 1937, the distribution to petitioner in 1938 were perforce out of capital. Decision will be entered under Rule 50.