Alma de Bretteville Spreckels (formerly Alma Spreckels Awl) v. Commissioner.
de Bretteville Spreckels v. Commissioner
Docket No. 5741.
United States Tax Court
1949 Tax Ct. Memo LEXIS 8; 8 T.C.M. (CCH) 1113; T.C.M. (RIA) 49299; December 27, 1949
*8 Dividends. - The extent to which distributions received by petitioner on stock of the J. D. and A. B. Spreckels Company during 1938, 1939, and 1940 constituted taxable dividends is, by stipulation, to be determined pursuant to the opinion in Grace H. Kelham, et al., 13 T.C. - (No. 125). Deduction: Bad debt. - On the facts, held that petitioner is entitled to a bad debt deduction for the year 1939. Earned income credit. - Held, that the amount thereof be recomputed under Rule 50. Eustace Cullinan, Esq., and O. K. Cushing, Esq., 1 Montgomery St., Room 821, San Francisco, Calif., for the petitioner. W. J. McFarland, Esq., and T. M. Mather, Esq., for the respondent. TYSON Memorandum Opinion TYSON, Judge: This proceeding involves income tax deficiencies determined by respondent against petitioner and also petitioner's claimed overpayment of income taxes for the calendar years and in the amounts as follows: Claimed
Year
Deficiency
Overpayment
1938
$ 5,192.50
$46,334.12
1939
55,576.12
1940
102,823.63
The issues presented are whether respondent erred: 1. In determining that the distributions made by J. D. and A. B. Spreckels Company to its stockholders in 1938, 1939, and 1940 constituted taxable *9 dividends to the extent of 100 per cent thereof. 2. In disallowing a claimed bad debt deduction of $174,138.26 for 1939 based on his determination that petitioner sustained a long-term capital loss in such amount deductible in 1939 only to the extent of 50 per cent thereof, and 3. In his computation of the amount of petitioner's earned income credit for 1940, in that he allowed only $300 instead of $727.33 after making an adjustment, not now contested, whereby respondent increased petitioner's income by an amount of $7,273.37 for that year. The proceeding has been submitted upon the pleadings, exhibits, and two stipulations of facts. The "Stipulation of Facts Re Dividend Issue", pertaining solely to the first issue herein, is identical with a similar stipulation filed in the proceeding of Grace H. Kelham, Docket No. 5333, setting forth three stipulated issues upon which the first issue herein is dependent and also containing various schedules and computations showing the results in the event of our decision in favor of petitioner or respondent on all or one or more of those stipulated issues. Such stipulations and the facts admitted by the pleadings are included herein by reference *10 as our findings of fact. We shall set forth only such facts as are deemed essential for the purposes of this opinion. The petitioner is an individual whose principal office is at No. 2 Pine Street, San Francisco, California, and her tax returns for the years involved were filed with the collector for the first district of California. For the year 1938 petitioner filed a tentative income tax return on March 15, 1939, and a completed return on or before April 15, 1939. On the completed return petitioner reported a tax of $46,334.12 and paid that tax in full in 1939. On March 6, 1942, petitioner filed a claim for refund of $46,334.12 income taxes paid for 1938, which claim respondent has failed and refused to allow. Petition herein was filed August 9, 1944. First Issue The stipulated facts set forth in detail for the years 1938, 1939, and 1940 the amounts received by petitioner as distributions on shares of the capital stock of the J. D. and A. B. Spreckels Company on account of her being the direct owner of such shares and also being the beneficiary of a trust holding such shares, the income of which trust was currently distributable to her. The basis of each and every share of such *11 stock to petitioner is in excess of the maximum capital distribution per share for the years involved, which may be redetermined in this proceeding. On the first issue, and pursuant to the stipulation of the parties, we hold that the extent to which the distributions in question constitute taxable dividends will be determined, under Rule 50, in accordance with this Court's opinion in the case of Grace H. Kelham et al., 13 T.C. (No. 125) and the appropriate stipulated schedules used in the recomputation pursuant to the opinion in that case. Second Issue In November 1937 the petitioner, for a consideration of $55,000 cash, acquired the land, building, fixtures, and furniture of the Samarkand Hotel at Santa Barbara, California. She thereupon organized the Samarkand Hotel Company, a corporation hereinafter referred to as the Hotel Company. In December 1937, pursuant to an agreement, petitioner transferred such hotel property to the Hotel Company in consideration for $55,000 which was fully paid by that company's issuance of all its capital stock, namely 550 shares, of the par value of $100 each, to petitioner. Thereafter, during the existence of the Hotel Company petitioner was its sole *12 stockholder, its president and a director; and its other officers and directors were relatives or employees of petitioner, except for the hotel manager. During the period of its operations, which commenced on December 1, 1937, and terminated on December 20, 1939, the Hotel Company never earned any profits. The company's income tax returns covering that period reported its gross revenues from the business and its operating losses in the following amounts: Gross
Operating
Taxable Period
Revenues
Loss
Month of December 1937
$ 884.00
$ 2,670.10
Calendar Year 1938
40,382.62
44,224.61
Jan. 1, 1939 to Dec. 20,
1939
80,824.02
59,562.74
On the balance sheet schedule attached to the tax return of the Hotel Company for each of the years 1937, 1938, and 1939, the petitioner's advances to it, as hereinafter set out, were reflected as a current liability in its open accounts and/or notes payable and not in its capital account. The Hotel Company's balance sheets as of December 31, 1937, December 31, 1938, and December 20, 1939, showed the following: ASSETS
Dec. 31, 1937
Dec. 31, 1938
Dec. 20, 1939
Current - (Cash, accts. rec., merchandise and supplies)
$ 4,592.21
$ 12,010.88
$ 5,063.12
Other Assets - (Objects of art held for resale)
18,335.50
17,935.50
17,605.50
Fixed Assets - (Land, bldg., furniture, equip., etc., less
reserve for depreciation)
64,598.50
165,449.70
218,932.76
Deferred Charges - (Prepaid insurance, etc., organ. ex-
pense)
5,445.72
12,703.82
10,658.84
Total Assets
$92,971.93
$208,099.90
$252,260.22
LIABILITIES
Current - (Accts. payable, accrued expenses)
$14,199.17
$ 14,665.40
$ 16,080.60
Current Account and Notes Payable, Alma B. Spreckels
26,442.86
185,306.16
287,614.02
Capital Stock and Surplus (Deficit) (Capital stock of
$55,000 as adjusted for operating losses)
52,329.90
8,128.34
(51,434.40)
Total Liabilities
$92,971.93
$208,099.90
$252,260.22
*13 During the month of December 1937 the Hotel Company purchased for purpose of resale, paintings, hangings, furniture, and objects of art at a total cost of $18,335.50. Petitioner advanced that amount and also the sum of $5,000 and received the Hotel Company's promissory notes for $5,000, dated December 15, 1937, and for $18,335.50, dated December 23, 1937. During that month petitioner also advanced an additional net amount of $3,107.36 which was not evidenced by a note. During each month in the year 1938 and during all but two months in the period from January to November 1939, inclusive, petitioner made advances to the Hotel Company which were used for its various expenses and also for its acquisition of certain fixed assets such as furniture and fixtures, operating equipment, etc. Such advances amounted to $158,808.30 during 1938 and $105,000 during 1939 for which she received the company's promissory notes in various sums, totaling those amounts respectively. During the existence of the Hotel Company from December 1, 1937 to December 20, 1939, petitioner made advances to it including those above mentioned, totaling $290,604.29, of which the sum of $287,143.80 was evidenced by that *14 company's 26 promissory notes in varying amounts and bearing dates at or subsequent to the time of each advance. Each note was made payable to the order of petitioner on demand with interest at the rate of five per cent per annum from date of issuance until paid. All of the notes were signed "Samarkand Hotel Company" by its vice-president and secretary, except one which was by its president and secretary. Each note was authorized or ratified by a resolution adopted by the Hotel Company's board of directors. On December 20, 1939, petitioner owed the Hotel Company $2,990.27 for hotel accommodations furnished her and on that date that amount was applied on her advances to the company totaling $290,604.29 leaving her net advances amounting to $287,614.02 which had not been repaid. The Hotel Company paid no interest on petitioner's advances. On December 20, 1939, pursuant to petitioner's offer accepted by the Hotel Company, the latter transferred all its assets to petitioner, subject to certain current liabilities assumed by her for the company's accrued expenses, and the net value of such assets in the sum of $113,475.76 was applied in partial repayment of the petitioner's above-mentioned *15 advances of $287,614.02. On December 20, 1939, the Hotel Company's organization expense, which had been carried as a deferred charge, was written off by a charge in that amount to the company's deficit account and following the transfer of its assets and current liabilities to petitioner, as set out in the next preceding paragraph, the remaining open accounts on the books of the Hotel Company consisted of the balance of its notes payable to petitioner in the sum of $174,138.26, its capital stock of $55,000, and its deficit in the sum of $229,138.26. On December 20, 1939, the Hotel Company's board of directors adopted a resolution that the company be dissolved. On the petitioner's books the above-mentioned promissory notes of the Hotel Company were carried under the head of "Notes Receivable". The unpaid balance of such notes in the sum of $174,138.26 on December 20, 1939 became worthless on that date and was written off by petitioner as a bad debt. On her tax return for 1939, petitioner claimed a loss deduction of $27,500 as one-half of a long-term capital loss of $55,000 on the worthless stock of the Hotel Company and she also claimed a bad debt deduction of $174,138.26 on account *16 of the Hotel Company's worthless notes. The respondent disallowed the entire claimed bad debt deduction of $174,138.26 based on his determination that petitioner's advances to the Hotel Company constituted contributions to the capital of that company and that on liquidation of the company in 1939 petitioner sustained a long-term capital loss deductible only to the extent of 50 per cent thereof. Respondent increased petitioner's claimed capital loss deduction of $27,500 by adding thereto the sum of $87,069.13 and allowed a total capital deduction in the amount of $114,569.13 for the year 1939. The respondent does not deny that in the taxable year 1939 petitioner actually sustained a loss of $55,000 on account of her original 1937 investment in the Hotel Company stock which became worthless upon the company's dissolution in 1939 and, also does not deny a loss of $174,138.26 on account of her advances to that company during the period from December 1937 to November 1939, inclusive. The question presented is whether petitioner made the advances as loans so that the $174,138.26 thereof which was never repaid and became worthless in 1939 constituted a bad debt deductible in full under section 23 (k), Internal Revenue Code *17 [1] *18 , as contended by petitioner, or, whether petitioner made the advances as additional contributions to the capital of the Hotel Company thereby increasing her cost basis for its shares of stock so that the original investment of $55,000, plus the $174,138.26 unrecovered portion of the advances, constituted a long-term capital loss deductible only to the extent of 50 per cent thereof, under section 117, I.R.C., [2] *19 as allowed and now contended by respondent. The respondent admits that the advances were in fact made in the form of loans by petitioner evidenced by the company's promissory notes and were in fact treated as loans on the records of the company and the personal books of petitioner, but he argues that we should disregard those facts and hold that the advances were made as additional capital contributions for the reasons: (a) That petitioner was the sole stockholder of the Hotel Company; (b) that the advances carried with them no reasonable expectation of repayment when *20 made because of the unprofitable operation of the hotel's business as shown by its operating losses in each of the approximate two years of its operations; and (c) that substantial portions of the advances were used for the Hotel Company's acquisition of additional fixed assets. These circumstances relied upon by respondent are not sufficient to constitute the advances a contribution to capital if the real intention of the parties was that the advances should constitute loans, for the intention is the controlling factor and where the bona fides is not questioned (as here) the facts that the lender was the sole stockholder and the corporation's business was not prospering are not a basis for disregarding the true intention or the right of the parties to create debts. William D. P. Jarvis, 43 B.T.A. 439; affirmed, 123 Fed. (2d) 742; Edward Katzinger Co., 44 B.T.A. 533, 536; affirmed, 129 Fed. (2d) 74; Van Clief v. Helvering, 135 Fed. (2d) 254. See also Daniel Gimbel, 36 B.T.A. 539. The fact that certain portions of the advances were used by the Hotel Company for the acquisition of additional fixed assets, such as furniture and fixtures, operating equipment, etc., does not show, *21 or tend to show, that the advances constituted capital contributions. Cf. Bunker Hill & Sullivan Mining, Etc., Co., 1 T.C. 1057. The facts set out in our findings show: That each of the notes was executed by the corporation; that the execution of each note was authorized by the board of directors of the corporation; that all of petitioner's advances were carried in an open account on the books of the corporation as a liability to the petitioner; that all those advances were carried on the balance sheets of the corporation as such a liability; that all those advances were also carried on balance sheets made a part of the Hotel Company's income tax returns as such a liability; that on December 20, 1939, the amount of $2,990.27 owed the hotel by the petitioner was applied on her then indebtedness to the corporation and on the same date, the corporation transferred its assets of a net value of $113,475.76 to petitioner in partial repayment of her advances, leaving an unpaid balance of such advances in the sum of $174,138.26; and that on petitioner's books her advances to the corporation were carried as an account receivable, the unpaid balance of which in the sum of $174,138.26 was charged *22 off as a bad debt on December 20, 1939. All these facts show that from the beginning of the short life of the Hotel Company and continuously thereafter until near its close the advances in question were treated and uniformly regarded by the parties as loans, and, in our opinion, each advance was intended by the parties to be a loan. In the face of the facts no reasonable inference can be drawn "that beneath the outward signs of a debt was a conception of additional contributions to * * * capital". William D. P. Jarvis, supra, page 445. We hold that petitioner's advances to the Hotel Company constituted loans which became worthless debts in 1939 and that respondent erred in disallowing her claimed bad debt deduction of $174,138.26 for that year. Third Issue On her 1940 income tax return petitioner reported a loss of $37,580.87. On "Schedule K - Computation of Earned Income Credit" she reported no "Earned net income" and also reported the loss of $37,580.87 for that year, but nevertheless claimed the minimum "Earned income credit" of $300. In his determination of petitioner's tax liability for 1940 the respondent made numerous adjustments resulting in an adjusted net income of $185,918.80. *23 By one of those adjustments, not here disputed, respondent included as additional income an item of "compensation $7,273.37" representing onehalf of her former husband's compensation for 1940 which constituted community income. In his computation of the tax due, respondent allowed the minimum earned income credit of $300. Petitioner contends that such credit should be increased to $727.34 representing an amount equal to 10 per cent of the earned income which respondent determined was taxable to her. In his answer, respondent denied error in computing petitioner's earned income credit for 1940, but on brief he makes no argument with respect thereto. This issue presents a matter of mathematical computation, pursuant to section 25 (a), Internal Revenue Code (1939), which involves not only the amount of petitioner's 1940 "earned net income" (consisting of "earned income" which includes wages, salaries, compensation, etc., less "earned income deductions"), but also the amount of her 1940 "net income" which is to be redetermined pursuant to this opinion. Accordingly, the amount of petitioner's earned income credit will be determined under Rule 50. Decision will be entered under Rule 50. *24 Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (I.R.C. as amended by section 124 of the Revenue Act of 1942 and section 113 of the Revenue Act of 1943, effective for the years beginning after December 31, 1938.) In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year (or, in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. * * *
(3) Definition of Securities. - As used in paragraphs (1), (2) and (4) of this subsection the term "securities" means bonds, debentures, notes, or certificates, or other evidences of indebtedness, issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form. ↩
2. SEC. 117. CAPITAL GAINS AND LOSSES. (I.R.C.) (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1); * * *
(5) Long-term Capital Loss. - The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such loss is taken into account in computing net income; * * *
(b) Percentage Taken into Account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income: 100 per centum if the capital asset has been held for not more than 18 months; 66 2/3 per centum if the capital asset has been held for more than 18 months but not for more than 24 months; 50 per centum if the capital asset has been held for more than 24 months.↩