WILLIAM D. P. JARVIS, AN INFANT, BY AMILIUS JARVIS, JR., GUARDIAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99227. Promulgated January 29, 1941.

*Paul P. Cohen, Esq.*, for the petitioner.
*Henry C. Clark, Esq.*, for the respondent.

440

## OPINION.

Sternhagen: 1. Petitioner contends that the later 1935 dividends were traceable in part to Acheson Corporation's capital and paid-in surplus because its accumulated earnings had been exhausted by prior distributions. The circumstances of the 1934 distribution were as follows:

The Acheson Corporation was organized in 1915, with a capital stock of $1,000,000, represented by 10,000 shares, all of which were issued to Edward G. Acheson. It began with a paid-in surplus of $911,499.66. Petitioner insists that the distribution of $1,160,000 in June 1934 served to reduce by $1,060,000 the accumulated earnings, so that distributions of $63,000 cash and of $990,000 in shares of the Graphite Corporation on or before May 14, 1935, completely exhausted the total of undistributed profits which had accumulated since inception. The 1934 distribution, however, was not a dividend. It was paid by the corporation to redeem 1,000 shares of its

own $100 par value stock and represented payment of $1,160 per share, the agreed price. During the remainder of 1935 the corporation declared dividends of $435,150. Between May 14 and December 27, 1935, date of the last dividend, the corporation's earnings amounted to only $349,183.56. Petitioner takes the position that "the cash distributions during that period totalling $435,150 were taxable as dividends to the stockholders of Acheson Corporation only to the extent of $349,183.56, being 82.74 per cent thereof." Thus stated, the facts are exactly comparable with those in *Foster v. United States*, 303 U. S. 118, except that here the existence of the corporation, and hence of its accumulated earnings, began in 1915, and the date of March 1, 1913, has no relevance. Were it not for that difference of fact there would be nothing to do but hold the 1935 distributions taxable, as the *Foster* case so clearly did.

But the difference is crucial. The 1913 date lay at every point in the Court's consideration of the *Foster* case. It permeates the entire reasoning of the opinion, and therefore the decision must be limited to cases involving pre-1913 earnings. It was said that the prior stock purchase was properly chargeable to capital account consisting of pre-1913 earnings and left post-1913 earnings unimpaired and available for distribution as a dividend in the later year. A tax on such a dividend was what Congress plainly intended to impose and it was not to be defeated by the bookkeeping device of charging it to pre-1913 earnings, which by earlier judicial decision had been held to be nontaxable capital. Cf. *Helvering* v. *Canfield*, 291 U. S. 163.

The present case involves no opportunity to escape a tax by a bookkeeping device. No doubt in this case all earnings and profits are taxable when distributed, no matter by what method or what label and no matter what the accounting, *Helvering* v. *Canfield*, *supra*. The Acheson Corporation has but one "capital account" and that account consists of the original amount received for its capital stock, comprising both the par value and the paid-in surplus, *August Horrmann*, 34 B. T. A. 1178, 1186-7; *Arthur C. Stifel*, 29 B. T. A. 1145, 1150. Any distributions properly chargeable to those funds are distributions of capital and not dividends, provided that distributions are first charged against earnings or profits and more particularly the most recently accumulated earnings or profits, as section 115 of the Revenue Act of 1934 prescribes, *Foley Securities Corporation* v. *Commissioner*, 106 Fed. (2d) 731. There is no pre-1913 source of tax-free distributions.

In so far as *John B. Stewart*, 29 B. T. A. 809; *Harter* v. *Helvering*, 79 Fed. (2d) 12, and *August Horrmann*, *supra*, recognize the later distribution as attributable to pre-1913 earnings, they are at variance with the *Foster* decision and must be regarded as to that ex-

tent overruled. But they are not overruled in so far as the dividend is attributed to post-1913 earnings. The 1934 transaction was a stock purchase by the corporation and *pro tanto* a liquidation—a reduction of capital by one-tenth. Thus of the $1,160,000 paid out by the corporation, $100,000 is properly chargeable to capital stock account, $91,149.97 (as petitioner now admits) to paid-in surplus, and the rest of the $1,160,000 to accumulated earnings and profits. Presumably the distribution of the last named earnings and profits was properly taxed in 1934 to the recipients. There is nothing in the statute to justify the belief that Congress intended to treat the 1935 distribution as from the same source and hence taxable again. Section 115 quite clearly indicates the contrary. How much was left in earned surplus immediately after the distribution in 1934 does not appear (although it does appear that on January 1, 1935, the earnings were $388,152.67). The corporation had further earnings in 1935; and it is not disputed that the 1935 distributions must in each instance be applied to the most recently accumulated earnings and treated by the shareholders as taxable dividends. After earnings and profits are thus exhausted, the remaining distributions must be regarded as properly chargeable to capital account and received by the shareholder not as a dividend, but as return of capital, with resulting gain or loss, depending on his basis. In this way the shareholders are taxed at one time or another upon all dividends—that is, distributions out of earnings or profits—and only after such earnings and profits have been exhausted is a shareholder recognized as recovering his capital.

2. In his computation of the earned surplus distributed in June 1934, petitioner adopts the figure which results from the write-off in 1926 of the $600,914.21 principal and interest of the debt owed to it by the Oildag Co. Respondent contends that the 1926 write-off was improper, that the surplus in 1934 was that much greater, and was therefore not exhausted by the 1934 distribution. The ground for respondent's position is that the advances made by the Acheson Corporation to Oildag from 1916 to 1926 were not loans, but were contributions to capital which served to increase the cost of the Acheson Corporation's investment in Oildag's shares, and as such were not susceptible of a surplus adjustment until the shares were finally disposed of.

The evidence shows that during the period of the advances, although the Oildag venture was not fruitful, both the parties and all concerned regarded the advances as loans and accounted for them as such. There is nothing from which it could be reasonably inferred that beneath the outward signs of a debt was a conception of additional contributions to Oildag's capital. *Bona fides* is not in doubt. Certainly the corporation had the right to create such debts.

The fact that the lender was a shareholder of the borrower is not enough to stamp the advances as contributions, *Daniel Gimbel*, 36 B. T. A. 539; *Harry T. Nicolai*, 42 B. T. A. 899.

The evidence, as shown by the findings, establishes that in 1926 the judgment of the directors that the amount was uncollectible was well founded. The Acheson Corporation properly charged it off and thus reduced its surplus. In this proceeding affecting 1935 it is not necessary to determine whether the entire debt was first ascertained to be worthless in 1926, as it would be if the issue were the corporation's right to a deduction in 1926. The issue here would be the same, irrespective of a write-off by the corporation each year of its advances. We are to say whether the surplus at the time of the stock purchase in 1934 used up earnings; and if the advances to Oildag were properly charged off in any prior year, the effect is to reduce the distributable earnings, and, as shown by the findings, to use them up. Since the $600,914.21 was a worthless credit long before 1934, it was properly eliminated from surplus and should not be restored for present purposes.

This is just as true of so much of the amount as represented interest ($131,452.52) as it is of the principal ($469,461.69), for the interest debt was as worthless as the principal. Even if, as respondent suggests, the interest debt was not in 1926 the proper subject of a tax deduction, that would not require its inclusion in the surplus of 1934.

It is held that the 1934 expenditure of $1,160,000 must be treated as using up $100,000 of capital stock, $91,149.97 of paid-in surplus, and the rest, earnings and profits. The 1935 dividends are to be applied against the most recently accumulated earnings and profits, and after all earnings and profits are thus used up the rest of the 1935 dividends is chargeable to capital account and not taxable as a dividend to the distributee shareholder.

Reviewed by the Board.

*Decision will be entered under Rule 50.*