**HELVERING, Commissioner of Internal Revenue, v. JARVIS.**

**No. 4854.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1941.

Samuel H. Levy, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and L. W. Post, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Paul P. Cohen, of Niagara Falls, N. Y., for respondent.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, here referred to as the Board. The opinion of the Board is reported in 43 B.T.A. 439. Income taxes for the year 1935, of the respondent, William D. P. Jarvis, an infant, here referred to as the taxpayers are involved. The Commissioner of Internal Revenue determined a deficiency against the taxpayer in the amount of $1,086.30, and taxpayer petitioned the Board for a review. The Board after a hearing found in favor of the taxpayer and the Commissioner petitions this court for a review of the finding of the Board.

There is no dispute as to the facts and a summary of them, as found by the Board, is in petitioner's brief as follows:

"Taxpayer, a minor, is the ward of Amilius Jarvis, Jr., appointed guardian of his person and property on October 23, 1934, by the Surrogate Court for York County, Ontario. He is the beneficiary of a trust, created on July 10, 1928, by his grandparents, who transferred to the Power City Bank (now Power City Trust Company) of New York, as trustee, 90 shares of the Acheson Corporation, directing that the trustee receive the income, apply it to taxpayer's support during minority, pay it to him thereafter for life, and distribute corpus on his death as he should direct by will, or in case of intestacy to his successors at law. The trust instrument defined corpus to include any shares received in place of the Acheson Corporation shares upon an exchange.

"On April 1, 1935, the trustee received a dividend of $630 on the 90 shares of

Acheson Corporation. It sold four of the shares on May 10, and during the remainder of the year received cash distributions, pursuant to dividend declarations, aggregating $4,158.10 on the remaining 86. It paid or credited the $4,788.10 so received to taxpayer. On May 18, 1935, it received from the Acheson Corporation 86 preferred shares of Acheson Graphite Corporation, of a value of $110 each or $9,460, pursuant to a resolution of the Acheson Corporation's board of directors of May 14, 1935, that 9,000 preferred shares of Acheson Graphite Corporation be distributed 'as a partial liquidation of the Corporation'. These shares the trustee held as corpus.

"The Acheson Corporation was organized in 1915 and issued its authorized capital stock of $1,000,000 represented by 10,000 shares, to Edward G. Acheson in consideration of securities transferred to it; it assumed obligations of $200,800. The value of the securities was $2,112,299.66, but was stated on the corporation's books to be $1,327,300. The Acheson Corporation's earnings and profits from its inception to December 31, 1934, amounted to $5,137,-990.15, as computed to reflect a 1926 charge-off of $600,913.21, notes of the Acheson Oildag Company. During this period it paid dividends of $3,664,100 and properly made additional charges of $25,-737.48 against earned surplus. On June 20, 1934, it charged $1,060,000 against surplus after acquiring 1,000 of its own shares for $1,160,000. Its earnings and profits for 1935 amounted to $561,462.47, of which $206,589.79 was allocable to the period January 1, to May 14, and $349,183.56 to the period May 14 to December 27, the date of the last distribution of the year. During the former period it distributed among its shareholders $63,000 pursuant to dividend declarations, and during the latter it so distributed $435,150. It also distributed 9,000 preferred shares of Acheson Graphite Corporation of a total value of $990,000, pursuant to the aforesaid resolution of May 14, 1935. Of these shares it owned 8,950 on July 10, 1928, and purchased 50 thereafter with the proceeds of sales of other securities held by it on that date. The cash and shares received by the trustee of taxpayer's trust in 1935 were the proportionate parts of these distributions to which the Acheson Corporation shares held in trust entitled the holder.

"When the Acheson Corporation distributed the Acheson Graphite Corporation shares on May 14, 1935, it had an accumulated earned surplus of $531,742.46, computed to reflect the charge-off of the Oildag notes in 1926 and the charge of $1,060,-000 to surplus in 1934. Computed without these adjustments, its earned surplus was then $2,192,655.67.

"The Acheson Corporation keeps its books and prepares its income tax returns on an accrual basis.

"When Edward G. Acheson died on July 6, 1931, he was the owner of 1,080 shares of the Acheson Corporation, which shares had a value of $1,194.99 each. His executors distributed 80 of the shares among five trusts to which they had been bequeathed. Estate taxes of $1,029,884.44 plus interest were assessed against the estate, which for tax purposes comprised funds of this and other trusts created on July 10, 1928, and besides the Acheson Corporation shares the trustees had available other assets of a value of less than $125,000. To raise funds for payment of estate tax, they offered on April 20, 1934, to sell the remaining 1,000 Acheson shares to the Acheson Corporation for $1,160 a share. The offer was immediately accepted by a directors' resolution. The board then consisted of ten directors, of whom three were also executors of the estate. Of the purchase price of $1,160,000, $70,000 was paid on May 28; $405,000 on June 20; and for the remaining $685,000, notes dated June 12, 1934, were given. Simultaneously the executors delivered to the corporation a certificate for the shares endorsed in blank. The certificate was canceled; none of the shares was ever reissued. To make the initial payments for the shares, the Acheson Corporation borrowed $350,000 and by May 1, 1935, had paid off the notes with the proceeds of loans and sales of securities. A directors' resolution to purchase 40 or less additional shares from trusts was also adopted on April 20, 1934, but no action followed.

"Upon the corporation's acquisition of the 1,000 shares $100,000, or par value, was charged to a newly opened account 'Treasury Stock' and $1,060,000 was charged to surplus with the journal notation, 'It is the purpose of the Acheson Corporation to treat this as unissued or Treasury stock.' At the same time the corporation's treasurer stated on an information report to the United States Corporation Company of Dover, Delaware, in respect thereof, 'Stock to be retired from issue by Acheson Cor-

poration, who purchased the same.' The same notation appears on the stock ledger by entry dated June 20, 1934. The 'Treasury Stock' account was closed on May 8, 1935, and the 'Capital Stock' account was debited $100,000 with the journal notation, 'To give effect to reduction of capital pursuant to certificate filed April 8th, 1935.' The series of recorded steps was ratified or authorized by a directors' resolution of March 12, 1935. On the same date the directors resolved that the corporation's capital stock be reduced to $900,000, consisting of 9,000 $100 par values shares, and that its certificate of incorporation be so amended. There has been no other redemption or modification of the corporate structure."

The pertinent statute is Section 115 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 703, which reads in part as follows:

"(a) Definition of Dividend. The term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

"(b) Source of Distributions. For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

(c) Distributions in Liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income. In the case of amounts distributed * * * in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of de-

termining the taxability of subsequent distributions by the corporation.

*       *       *       *       *

"(h) Distribution of Stock on Reorganization—Effect on Future Distributions. The distribution before January 1, 1934, in pursuance of a plan of reorganization, by or on behalf of a corporation a party to the reorganization, of its stock or securities or stock or securities in a corporation a party to the reorganization, if no gain to the distributee from the receipt of such stock or securities was recognized by law, shall not be considered a distribution of earnings or profits within the meaning of this section for the purpose of determining the taxability of subsequent distributions by the corporations. * * *

"(i) Definition of Partial Liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

The only question involved is whether a distribution received by the taxpayer from the Acheson Corporation in 1935 was paid, in part, from capital and therefore nontaxable to that extent or whether it was paid from earnings, profits or surplus of the distributing corporation and fully taxable.

It can be seen at once that the character of the distribution in 1935 depends upon the extent to which the distribution in 1934 exhausted the accumulated earnings at that time. This is true because the distribution in 1935 exceeded the earnings of 1935, plus the accumulated earnings on December 31, 1934, as the latter was shown on the corporation's books. The Board accepted this showing as correct and accordingly held that the excess distribution in 1935 was properly chargeable to capital.

The distribution of $1,160,000 on June 20, 1934, was not a dividend but was paid by the corporation to redeem 1,000 shares of $100 par value stock at $1,160 per share. Thereby one-tenth of the capital stock of $1,000,000 was retired. The corporation charged to capital account $100,000 and in addition one-tenth of the paid-in surplus of $911,499.66, or $191,149.97, in all; and charged the balance of the distribution, that is, $968,850.03 to earnings. This left

accumulated earnings of $479,302.64 on hand at the beginning of 1935.

Between January 1 and May 14, 1935, the corporation had profits of $206,589.79 and paid out $63,000 in cash dividends. Therefore, according to its calculations, the accumulated earnings on May 14, 1935, amounted to $622,892.43. On May 14, 1935, the corporation distributed to its stockholders 9,000 shares of stock of an unaffiliated corporation of the value of $990,000. That distribution exhausted the accumulated earnings as shown on the company's books.

During the remainder of 1935, the earnings amounted to $349,183.56, and the dividends distributed amounted to $431,150. Accepting these figures as correct, the Board held that the cash distribution so made was taxable as dividends to the stockholders only to the extent of such earnings, that is, 82.74 per cent of the distribution was taxable, while the residue, 17.26 per cent of the distribution was chargeable to capital. A reduction of the base of the stock for capital gains tax purposes was thereby effected. The question for decision is whether the corporation made the proper charges to capital and to accumulated earnings respectively by reason of the distribution of 1934, as the Board held, or whether the Commissioner is right in his contention that the entire amount distributed in 1934 should be charged to the capital account of the corporation.

It seems to us that the Board reached the correct conclusion. As was said by it in its opinion: "The present case involves no opportunity to escape a tax by a bookkeeping device. No doubt in this case all earnings and profits are taxable when distributed, no matter by what method or what label and no matter what the accounting. Helvering v. Canfield [291 U.S. 163, 54 S.Ct. 368, 78 L.Ed. 706], supra. The Acheson Corporation has but one 'capital account' and that account consists of the original amount received for its capital stock, comprising both the par value and the paid-in surplus, August Horrmann [Horrmann v. Commissioner], 34 B.T.A. 1178, 1186, 1187; Arthur C. Stifel [Stifel v. Commissioner], 29 B.T.A. 1145, 1150. Any distributions properly chargeable to those funds are distributions of capital and not dividends, provided that distributions are first charged against earnings or profits and more particularly the most recent accumulated earnings or profits, as section 115 of the Revenue Act of 1934 prescribes, Foley

Securities Corporation v. Commissioner [8 Cir.], 106 F.2d 731. There is no pre-1913 source of tax-free distributions."

Of the $1,160,000 paid out by the corporation in the 1934 transaction, $100,000 is properly chargeable to the capital stock account, $91,149.97 to paid-in surplus, and the balance of the $1,160,000 to accumulated earnings and profits.

The distribution of earnings and profits was undoubtedly taxed in 1934 to the recipients. It is not to be presumed that Congress intended to treat the 1935 distribution as from the same source and therefore taxable again. A study of Section 115 clearly indicates the contrary.

Again, as was said by the Board in its opinion: "The corporation had further earnings in 1935; and it is not disputed that the 1935 distributions must in each instance be applied to the most recently accumulated earnings and treated by the shareholders as taxable dividends. After earnings and profits are thus exhausted, the remaining distributions must be regarded as properly chargeable to capital account and received by the shareholder not as a dividend, but as return of capital, with resulting gain or loss, depending on his basis. In this way the shareholders are taxed at one time or another upon all dividends—that is, distributions out of earnings or profits—and only after such earnings and profits have been exhausted is a shareholder recognized as recovering his capital."

Certain computations as to the earned surplus of the Acheson Corporation distributed in June, 1934, resulting from the write-off in 1926 of over $600,000 of the debt due it from the Oildag Company were resolved, we think correctly, in favor of taxpayer's contention. The charge-off was a proper one, both as to principal and interest.

It follows, as held by the Board, "that the 1934 expenditure of $1,160,000 must be treated as using up $100,000 of capital stock, $91,149.97 of paid-in surplus, and the rest, earnings and profits. The 1935 dividends are to be applied against the most recently accumulated earnings and profits, and after all earnings and profits are thus used up the rest of the 1935 dividends is chargeable to capital account and not taxable as a dividend to the distributee shareholder."

The petitioner relies on the case of Foster v. United States, 303 U.S. 118, 58 S.Ct. 424, 82 L.Ed. 700, and urges strongly

that the decision in that case is controlling here. The Foster case dealt with pre-1913 earnings. Here the Acheson Corporation began its existence in 1915 and began to accumulate earnings from that date. The Foster case is clearly limited, as is shown by a study of the opinion there, to transactions involving those occurring before 1913 and in that respect is clearly distinguishable from the instant case and is, therefore, not controlling.

The Foster case prevented an escape from taxation by the stockholder of earnings made after 1913. Neither in that case nor in Section 115 is shown any intent to impose both a normal tax and a surtax upon the gain realized by the stockholder in a partial liquidation or to impose, in connection with subsequent distribution, an additional dividend tax upon the corporation's earnings after 1913, distributed as a partial liquidation, and which have been taxed as such.

The petitioner contends in the alternative that, if the 1934 distribution by the corporation should be regarded as the Board held, the Board failed to take into account the unrealized appreciation of the corporation's assets. The Board rejected this alternative theory on the grounds that the evidence did not support a finding that the "difference stated represented a reserve not shown on the Acheson Corporation's accounting records." In this conclusion we are of the opinion that the Board was correct.

The order of the Board is accordingly affirmed.