ESTATE OF PERCY URIS, DECEASED, IRVING TRUST CO., EXECUTOR, AND JOANNE URIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HAROLD D. URIS AND RUTH URIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 903–75, 904–75.    Filed June 30, 1977.

*Benjamin Newman, Gerald H. Sherman,* and *Jerry J. McCoy,* for the petitioners.

*Rudolph J. Korbel* and *William K. Carr,* for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in the Federal income tax of petitioners Percy Uris and Joanne Uris in the amounts of $629,333 and $15,284 for the calendar years 1969 and 1970, respectively. Respondent determined

deficiencies in the Federal income tax of petitioners Harold D. Uris and Ruth Uris in the amount of $611,835 for the calendar year 1969.

The issue for decision is the extent to which a distribution in 1969 by Uris Lexington, Inc., to each of its two shareholders (petitioners in this case) was from accumulated earnings and profits of that corporation so as to cause the distribution to be taxable under section 301(c)(1), I.R.C. 1954,[1] as a dividend to each shareholder.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Irving Trust Co., coexecutor of the Estate of Percy Uris, and Joanne Uris both had their legal residence in New York, N.Y., at the time of the filing of the petition in this case. Harold D. Uris and Ruth Uris, husband and wife, had their legal residence in New York, N.Y., at the time of the filing of their petition in this case. Percy Uris, who died on November 20, 1971, and Joanne Uris were husband and wife during the calendar years 1969 and 1970. They filed joint Federal income tax returns for these calendar years with the District Director of Internal Revenue at New York, N.Y. Harold D. Uris and Ruth Uris filed a joint Federal income tax return for the calendar year 1969 with the District Director of Internal Revenue, New York, N.Y.

On November 24, 1954, Percy Uris and Harold Uris (who will hereinafter be referred to as petitioners even though Mr. Percy Uris is now deceased) and a number of other individuals organized a corporation by the name of Uris Lexington, Inc. (hereinafter called Uris Lexington), under the laws of the State of New York. Following its incorporation 980 shares of no-par-value common stock were issued by the corporation for a total consideration of $750,000 in cash. Percy Uris received 350 shares and Harold Uris received 350 shares, with the remaining investors receiving a total of 280 shares. Uris Lexington keeps its books and records and files its Federal income tax returns on the cash basis method of accounting for a fiscal year ending October 31.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

In 1955 Uris Lexington commenced the construction of an office building at 485 Lexington Ave., New York, N.Y. The building consisted of 31 stories and a basement and subbasement containing approximately 712,965 rentable square feet. The construction of this building was completed in 1956. Uris Lexington owned and operated the building as an office building from 1956 throughout the years here in issue.

From the date construction was completed through 1969, the office building enjoyed almost 100-percent occupancy. The following schedule sets forth the profit and loss from operations, the amount of tax-exempt interest income, the amount of Federal income taxes paid annually, the amount of annual depreciation, and the surplus or deficit per the income tax returns of Uris Lexington for each of its fiscal years ending October 31, 1955, through October 31, 1969:

| FYE Oct. 31— | Profit (loss) from operations | Tax exempt income | Federal income taxes paid | Surplus (deficit) per tax return | Depreciation |
|---|---|---|---|---|---|
| 1955 | ($232,949) | | | ($232,948) | |
| 1956 | (498,319) | | . | (731,267) | $71,117 |
| 1957 | (512,962) | | | (1,244,229) | 1,016,963 |
| 1958 | 166,459 | | | (1,077,770) | 929,463 |
| 1959 | 299,617 | | | (778,153) | 848,194 |
| 1960 | 517,011 | $324 | | (260,817) | 634,120 |
| | | | | 588,000 distribution | |
| | | | | (848,817) | |
| 1961 | 738,621 | | $242,789 | (352,986) | 595,400 |
| 1962 | 650,994 | | 333,017 | (35,195) | 560,892 |
| | | | | 2,456,000 distribution | |
| | | | | (2,491,195) | |
| 1963 | 691,277 | | 353,964 | (2,153,882) | 529,390 |
| 1964 | 720,235 | | 355,768 | (1,789,415) | 500,612 |
| 1965 | 748,166 | | 355,037 | (1,396,286) | 474,302 |
| 1966 | 767,190 | 3,731 | 361,751 | (987,116) | 450,231 |
| 1967 | 839,733 | 22,408 | 396,572 | (521,547) | 428,190 |
| 1968 | 833,315 | 79,160 | 426,282 | (35,354) | 407,990 |
| 1969 | 755,664 | 66,508 | 391,625 | 395,193 | 389,463 |
| | | | | 2,607,784 distribution | |
| | | | | (2,212,591) | |

During the fiscal year ending October 31, 1960, Uris Lexington made a pro rata distribution to its shareholders with respect to its no-par-value common stock in the amount of $588,000.

In 1962 a disagreement developed between the minority shareholders of Uris Lexington and petitioners as to the

disposition of the profits of the corporation. This disagreement was resolved by Uris Lexington redeeming its shares held by all shareholders other than petitioners. At a meeting on April 3, 1962, the board of directors of Uris Lexington resolved that the corporation would redeem 280 shares of outstanding common stock for an amount equal to $10,200 per share.[2] The board of directors further resolved that the certificate of incorporation of Uris Lexington be amended to provide for a reduction in the number of shares of capital stock of the corporation in accordance with the redemption. The total distribution in redemption of the 280 shares of stock was $2,856,000. The redemption distribution received by each of the minority shareholders qualified as a distribution in full payment in exchange for such shareholder's stock under the provisions of sections 302(a) and 302(b)(3). The total contribution to capital made by the minority shareholders whose stock was redeemed on April 3, 1962, was $400,000. Following the redemption, the remaining shares of no-par-value common stock of Uris Lexington were held as follows:

| Shareholder | Number of shares | Cost basis |
|---|---|---|
| Percy Uris | 350 | $175,000 |
| Harold D. Uris | 350 | 175,000 |

The distributions to the minority shareholders in the redemption were in cash and the funds for the distributions were obtained by the corporation by borrowing money through an addition to the existing first mortgage loan on the office building at 485 Lexington Avenue. As further security for its additional loan, Uris Lexington assigned to the bank making the loan the leases of space in the building.

On the balance sheet of Uris Lexington for its fiscal year 1962 as shown on its Federal income tax return, the basis in

---

[2] The shares held by the following shareholders were redeemed:

| Shareholder | Number of shares | Shareholder | Number of shares |
|---|---|---|---|
| Eugene R. Sarezky | 10 | Milton Copland | 10 |
| Gussie Sarezky | 10 | Monroe Sarezky | 5 |
| B. H. Friedman | 80 | Carol S. Rand | 5 |
| Lester R. Bachner | 30 | Gertrude U. Kaufman and | |
| Frank F. Firestone | 10 | Robert Gallop, trustees | 30 |
| Marvin Rothenstein | 30 | Sanford Friedman | 10 |
| H. Donald Harvey | 50 | Total | 280 |

the office building was stated to be $13,093,142 less accumulated depreciation of $4,091,913. The basis of land was shown as $4,189,546. An appraisal made for the bank at the time the bank made the additional mortgage loan to Uris Lexington showed the fair market value of the land and buildings to be $24,325,000 of which $5,400,000 was allocated to land. This appraisal was on the basis of an economic approach. Using an approach based upon comparable sales of land and the replacement cost of the building, the appraisal showed the value of the property to be $26,150,000. The balance sheet on the Federal income tax return of Uris Lexington for its fiscal year 1962 showed mortgages payable of $13,567,097 at the beginning of the year and of $16 million at the close of the year.

On March 26, 1969, Uris Lexington made a cash distribution of $2,607,784 with respect to its no-par-value common stock. Percy Uris and Harold Uris each received $1,303,892 of this distribution.[3]

This distribution by Uris Lexington was treated by petitioners in their respective 1969 Federal income tax returns as follows:

---

[3] This fact is stipulated in the stipulation of facts filed at the trial. However, in petitioners' reply brief they state that at a date subsequent to the filing of the opening briefs in this case petitioners discovered that the distribution of Mar. 26, 1969, was not made in cash, but rather in securities. Petitioners state that the basis to Uris Lexington in these securities was $2,607,784, but that the fair market value of the securities on the date of distribution was $2,569,240. Petitioners further state that "Accordingly, the amount of the 1969 distribution to each of the Petitioners was not one-half of $2,607,784, or $1,303,892, but was in fact one-half of $2,569,240, or $1,284,620 (i.e., $19,272 less than $1,303,892). Each Petitioner correctly reported as having received in the distribution the $1,284,620 in market value of the distributed securities, rather than the $1,303,892 in basis thereof to Uris Lexington."

Petitioners have not filed a motion to change the stipulation and respondent has not indicated that he agrees to this change. We, therefore, are bound by the stipulation of facts filed at the trial. However, due to adjustments previously agreed to by the parties and therefore not placed in issue in this case, decision will be entered pursuant to Rule 155. If the parties reach an agreement that the stipulation as to the distribution is in error, such agreement may be reflected in the computations under Rule 155.

| Shareholder | Percy Uris | Harold D. Uris |
|---|---|---|
| Dividend | $182,020 | $182,020 |
| Reduction of basis | 175,000 | 175,000 |
| Gain from sale or exchange | 927,600 | 927,600 |
| Total | 1,284,620 | 1,284,620 |

In the statutory notice of deficiency mailed to Percy Uris and Joanne Uris, respondent treated the distribution to Percy Uris by Uris Lexington in 1969 as taxable in full as a dividend with the following explanation:

(a) It is determined that the $1,303,892.00 distributions you received from Uris Lexington Inc. in 1969 constitutes a taxable dividend under sections 301 and 316 of the Internal Revenue Code (instead of a long term capital gain as reported in your 1969 tax return) and is includible in your gross income under section 61 of the Code. Inasmuch as you reported $182,020.00 of the distribution as dividend income, dividend income is increased by $1,121,872.00 and inasmuch as you reported $927,600.00 of the distribution as long term capital gain, long term capital gains have been decreased in the amount of $927,600.00. Accordingly, your taxable income is increased in the amount of $1,121,872.00 for taxable year 1969.

The deficiency asserted for 1970 against Percy and Joanne Uris arises because of an increased allowance of a charitable contribution deduction for 1969 as the result of the increase in income for that year causing the claimed charitable contribution deduction carryover to 1970 to be reduced by a like amount.

In the statutory notice of deficiency mailed to Harold D. Uris and Ruth Uris, respondent has treated the distribution from Uris Lexington in 1969 as taxable in full as a dividend with the same explanation as stated in his notice to Percy and Joanne Uris.

### OPINION

Section 301(a)[4] provides in general that a distribution of property made by a corporation to a shareholder is to be

---

[4] SEC. 301. DISTRIBUTIONS OF PROPERTY.

(a) IN GENERAL.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).
* * *

(c) AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—

(1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

(2) AMOUNT APPLIED AGAINST BASIS.—That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock.

(3) AMOUNT IN EXCESS OF BASIS.—

(A) IN GENERAL.—Except as provided in subparagraph (B), that portion of the

treated as provided in subsection (c). Under section 301(c) the portion of a distribution which is a dividend shall be included in gross income. The term "dividend" is defined by section 316(a)[5] as any distribution of property made by a corporation to its shareholders (1) out of accumulated earnings and profits, or (2) out of current earnings and profits. This section further provides that every distribution is presumed to have been made from earnings and profits, to the extent thereof, unless otherwise provided and that the distribution is out of the most recently accumulated earnings and profits. Section 301(c)(2) and (c)(3) provides, in effect, that once the distribution exceeds the amount of current and accumulated earnings and profits, the remaining portion of the distribution shall be applied against and reduce the adjusted basis of the stock in the hands of the shareholder and the amount in excess of the adjusted basis shall be treated as a gain from the sale or exchange of property.

Since as both parties agree, the distribution in the amount of $2,607,784 in 1969 to petitioners from Uris Lexington was a distribution with respect to its no-par-value common stock, the amount each petitioner is required to include in his gross income for the year 1969 depends on the amount of the current and accumulated earnings and profits of the corporation for its fiscal year 1969. (Sec. 301(c)(1)). There is no dispute between the parties as to the current earnings and profits of

---

distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property.

(B) DISTRIBUTIONS OUT OF INCREASE IN VALUE ACCRUED BEFORE MARCH 1, 1913.— That portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock and to the extent that it is out of increase in value accrued before March 1, 1913, shall be exempt from tax.

[5] SEC. 316. DIVIDEND DEFINED.

(a) GENERAL RULE.—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

Uris Lexington for its fiscal year 1969. Also, the parties are in agreement as to all items of profit and loss of Uris Lexington, the tax-exempt interest received by the corporation, and its Federal income tax paid and the pro rata distributions to stockholders of $588,000 in 1960. From these agreed facts, the accumulated earnings and profits of Uris Lexington as of the beginning of its fiscal year 1969 could be readily computed except for the dispute between the parties as to the effect on the corporate accumulated earnings and profits of the payments by the corporation in 1962 to its minority shareholders in redemption of their stock. The parties agree that these redemptions met the requirements of section 302(a) and (b)(3).

Petitioners take the position that the accumulated earnings and profits account of Uris Lexington as of November 1, 1968, was a negative figure, and therefore the dividend component of the 1969 distribution is limited to the amount of the fiscal year 1969 current earnings and profits of the corporation. Petitioners' position is that the 1962 payment in redemption of the stock of the minority shareholders in excess of the amount chargeable to the corporation's capital account must be absorbed by earnings and profits in years following 1962 before any accumulated earnings and profits remain for payment to the remaining shareholders of a dividend. Petitioners contend that the provisions of section 312(e) require this conclusion.

Respondent takes the position that under the provisions of section 312(a) and (e) the excess of the 1962 payment in redemption of stock of Uris Lexington over the amount chargeable to the capital account of the corporation reduced the earnings and profits of the corporation at that time only to the then extent of such earnings and profits and that the amount of the payment in excess of the amount chargeable to the capital account and the corporate earnings and profits in 1962 is not to be offset against earnings and profits for years subsequent to 1962. Respondent contends that to permit the offset for which petitioners contend would in effect be permitting the redemption payment in 1962 to create a deficit in the earnings and profits of Uris Lexington.

Section 312(a)[6] provides that except as otherwise provided in that section, on a distribution of property by a corporation

---

[6] SEC. 312. EFFECT ON EARNINGS AND PROFITS.
  (a) GENERAL RULE.—Except as otherwise provided in this section, on the

with respect to its stock, the earnings and profits of the corporation "to the extent thereof" shall be decreased by the amount of money distributed, and section 312(e)[7] provides for a "Special Rule" for certain redemptions. Under section 312(e) where the distribution is in a redemption to which section 302(a) applies, the part of such distribution which is properly chargeable to capital account shall not be treated as a distribution of earnings and profits.

Petitioners argue that under section 312(e) the amount properly charged to the capital account is to be determined in accordance with *Jarvis v. Commissioner*, 43 B.T.A. 439 (1941), as affirmed by *Helvering v. Jarvis*, 123 F.2d 742 (4th Cir. 1941), with the remaining amount charged in full as a reduction to earnings and profits. Petitioners contend section 312(a) has no application in a redemption distribution. Petitioners then argue that the amount charged to earnings and profits in 1962 in excess of current earnings and profits effected a reduction in the November 1, 1968, accumulated earnings and profits balance of Uris Lexington. From this argument, petitioners conclude that the distribution in 1969 is taxable as a dividend only to the extent of the current earnings and profits of Uris Lexington.[8]

---

distribution of property by a corporation with respect to its stock, the earnings and profits of the corporation (to the extent thereof) shall be decreased by the sum of—

(1) the amount of money,

(2) the principal amount of the obligations of such corporation, and

(3) the adjusted basis of the other property,

so distributed.

[7] SEC. 312(e). SPECIAL RULE FOR PARTIAL LIQUIDATIONS AND CERTAIN REDEMPTIONS.—In the case of amounts distributed in partial liquidation (whether before, on, or after June 22, 1954) or in a redemption to which section 302(a) or 303 applies, the part of such distribution which is properly chargeable to capital account shall not be treated as a distribution of earnings and profits.

[8] In petitioners' reply brief filed in this case, petitioners state that they have discovered an error in the computation of earnings and profits used to determine the amount of the dividend income they reported on their respective Federal income tax returns as a result of the 1969 distribution. On their respective Federal income tax returns petitioners each reported $182,020 of dividend income, a total of $364,040. However, they note, and correctly so, that as calculated from the parties' stipulation of facts, Uris Lexington had current earnings and profits in 1969 of $430,547. The difference, petitioners state, resulted from the inadvertent omission of $66,508 of tax-exempt interest received by Uris Lexington in its taxable year ended Oct. 31, 1969, from its current earnings and profits for that year. Accordingly, petitioners concede that they each received an amount of $33,254 of dividend income in excess of the amount reported and consequently the gain from sale or exchange of property reported should be reduced in a like amount.

It is respondent's position that section 312(a) is applicable to distributions in redemption of stock in excess of the amount chargeable to capital account. Respondent agrees with petitioner that since the year here involved is 1969, the amount of the 1962 distribution chargeable to the capital account is to be computed in accordance with the holding of this Court in the *Jarvis* case,[9] *supra*.

Petitioners contend that since section 312(e) is the sole provision applicable to the redemption distribution and the parenthetical language of section 312(a) "to the extent thereof" has no counterpart under section 312(e), the 1962 distribution in excess of the proper charge to the capital account remains to be absorbed by future earnings and profits before accumulated earnings and profits are available to cause a later distribution to result in a dividend. Petitioners argue that the language in section 312(a) of "distribution of property by a corporation with respect to its stock" has reference to distributions which are in the nature of dividends and which are paid to persons who are and who remain shareholders with no meaningful change, by virtue of the distribution, in the position they enjoy relative to other shareholders. Petitioners then state that "The term 'distribution with respect to stock' is a technical one which has a specific and limited meaning. It refers statutorily, * * *, solely to these dividend distributions." Petitioners then state with respect to distributions in redemption that—

In contrast to the rules provided for distributions with respect to stock, the Code distinguishes "distributions in part or full payment in exchange for stock." The gain, if any, on a distribution of the latter type is treated as gain from the sale of property (normally, but not in every situation, a capital gain), rather than income earned from the continued ownership of the property. Partial liquidations and redemptions are granted such exchange treatment under sections 346, 331(a)(2), 302(a) and 303(a). This redemption-exchange treatment is in recognition of the fact that, unlike a shareholder who receives a current distribution with respect to his stock (i.e., who receives a return *on* investment), the recipient of an exchange distribution surrenders all or a portion of his interest in the corporation in

---

[9] The parties agree that the amount of the 1962 payment in the redemption of stock properly chargeable to the capital account under the decision in *Jarvis v. Commissioner*, 43 B.T.A. 439 (1941), as affirmed by *Helvering v. Jarvis*, 123 F.2d 742 (4th Cir. 1941), is $400,000. We, therefore, have no issue in respect to the proper charge to the capital account under sec. 312(e).

exchange for the distribution (i.e., he receives a return *of* investment). To the extent of such surrender, this shareholder will not participate in future operations of the corporation.

In the case of exchange or "terminating" distributions (i.e., partial liquidation distributions and redemption distributions to which section 302(a) or section 303 applies), section 312(e) (rather than section 312(a)), provides the governing earnings and profits rule. The nonapplicability to redemption distributions of section 312(a) (the governing earnings and profits rule for distributions "with respect to stock") is in recognition of the basic difference between redemption distributions and current distributions with respect to stock. [Fn. refs. omitted.]

In our view petitioners' approach to the statutory construction of sections 312(a) and 312(e) is erroneous.[10] The proper construction to be given to these two provisions is that section 312(a) provides the general rule that there shall be a reduction in the corporation's earnings and profits account upon distributions by the corporation to its shareholders with respect to its stock, including that part of those distributions made in exchange for stock under a redemption qualifying under section 302(a) and (b)(3) which is not properly chargeable to the capital account. Section 312(e) does not provide for a decrease in earnings and profits when a distribution in redemption of stock to which section 302(a) is applicable is made but merely provides that the part of the distribution "properly chargeable to capital account shall not be treated as a distribution of earnings and profits." There is nothing in section 312(e) to state how the portion of the distribution not properly chargeable to the capital account is to be treated. By inference it might be assumed that this amount "is to be treated as a distribution of earnings and profits." The clear inference is that the portion of the distribution which is not chargeable to the capital account under section 312(e) is to be treated as a distribution under section 312(a) and therefore reduces earnings and profits "to the extent thereof."

---

[10] The error in this construction is demonstrated by the following statement in the House committee report with respect to sec. 305 dealing with the treatment to shareholders of distributions of stock:

"Where mention is made of an issuance or a distribution 'with respect to stock' in this section and throughout subchapter C, such phrase means the issuance or distribution to a holder of such stock by reason of his rights as a holder of such stock regardless of whether any of his stock is redeemed, surrendered, or exchanged in connection with such issuance or distribution. [H. Rept. 1337, 83d Cong., 2d Sess. A81–A82 (1954).]"

In *Anderson v. Commissioner,* 67 T.C. 522 (1976), we stated (p. 554) that after the proper charge to the capital account of a distribution in redemption of stock to which section 302(a) is applicable, the balance is a charge "to earnings and profits to the extent thereof." The *Anderson* case involved the amount of a distribution taxable to the shareholders of a corporation which in the same year made distributions under both section 301(c) and section 302(a). The corporation had no accumulated earnings and profits and the amount of current earnings and profits was not sufficient to cover the appropriate charges from both categories of distributions. In concluding that the distributions under section 301(c) were charged first to earnings and profits in preference to the redemption distribution, we stated (pp. 556–557):

Section 312(a) states as a general rule that "on the distribution of property * * * earnings and profits * * * shall be decreased" by certain amounts, except as otherwise provided in this section. One of the exceptions contemplated is subsection (e), * * *, which limits the reduction of earnings and profits under subsection (a) to that amount which is not a proper charge to capital. [Fn. ref. omitted.]

The issue involved in the *Anderson* case differs from the issue in the instant case. However, the interrelation of sections 312(a) and 312(e) is the same when applied to the issue in this case and the issue in the *Anderson* case.[11] It is our conclusion based both on our analysis of the statutes as applicable to the facts of this case and the analysis of the statutes in the *Anderson* case that sections 312(a) and 312(e) are not to be read as mutually exclusive in their application. In our view the proper construction of section 312(e) is that it provides only that a proper charge to the capital account is to be made in case of certain redemption distributions before the balance of the distribution is charged to earnings and profits in accordance with section 312(a). Inherent in our holding in *Stephens v. Commissioner,* 60 T.C. 1004, 1015–1016 (1973), and *Enoch v. Commissioner,* 57 T.C. 781, 800–801 (1972), and the holding in *Bennett v. United States,* 427 F.2d 1202, 1215–1217

---

[11] In *Anderson v. Commissioner,* 67 T.C. 522, 532–543 (1976), we discussed at length the legislative history of sec. 312(e) and its predecessor statutes as well as the problem of allocation of a "proper" amount to the capital account. Nothing in this legislative history indicates that the amount not chargeable to the capital account was to be treated other than under the provisions of sec. 312(a).

(Ct. Cl. 1970), is the conclusion that section 312(a) governs the amount of the reduction in earnings and profits of a corporation resulting from a distribution by a corporation in a section 302(a) redemption of stock to the extent that the distribution is in excess of the amount properly chargeable to the capital account.[12] Petitioners' interpretation of section 312(a) as not being applicable to distributions in redemption meeting the requirements of section 302(a) is contrary to the legislative history of the section. Section 312(a) was first enacted as part of the Internal Revenue Code of 1954. It had no predecessor in prior Revenue Acts, but the legislative history indicates that the provision was designed to clarify existing law. S. Rept. 1622, 83d Cong., 2d Sess. 248 (1954).

Prior to the enactment of section 312(a), only impairments of capital caused by losses were required to be restored out of subsequent earnings before there could be accumulated earnings and profits available for dividends. See *Van Norman Co. v. Welch,* 141 F.2d 99, 102 (1st Cir. 1944). In *Meyer v. Commissioner,* 7 T.C. 1381 (1946), there was a distribution in redemption of a sole shareholder's preferred stock. The

---

[12] In *Baker v. United States,* 460 F.2d 827 (8th Cir. 1972), the three separate opinions discuss the relationship of secs. 312(a) and 312(e). Two of the opinions concluded that sec. 312(e) had the limited role of removing from the earnings adjustment under sec. 312(a) the part of a redemption distribution which is properly chargeable to capital. (p. 847). The third opinion concluded that sec. 312(e) exclusively governed redemptive distributions and no part of such distributions should be used under sec. 312(a) to reduce earnings and profits, citing (p. 838) Edelstein & Korbel, "The Impact of Redemption and Liquidation Distributions on Earnings and Profits: Tax Accounting Aberrations Under Section 312(e)," 20 Tax L. Rev. 479 (1965). See Haskell Edelstein's discussion of this case in "Eighth Circuit's *Baker* decision: Filling a statutory gap by judicial pragmatism," 38 J. Taxation 66, 68 (1973). The opinion in the *Baker* case that did not consider sec. 312(a) to be applicable to a redemption distribution to which sec. 312(e) was applicable explained the nature of a redemption as follows at p. 836:

"In my view, the principal difficulty in this case is caused by the attempt to transform what is essentially a capital transaction—i. e., the redemptive distributions—into an ordinary income transaction of the corporation. Under ordinarily accepted accounting procedures, a corporation's transactions in its own stock are not reflected in its income statement, which reflects the potential availability of dividends to stockholders. While admittedly the income statement as a matter of accepted corporate accounting does not correspond exactly to the earnings and profits account for purposes of tax accounting, the two are closely enough related that there should be some semblance of similarity in their treatment. Under this view, I cannot accept the proposition that redemptive distributions can be allowed to so exhaust the corporation's earnings and profits as to render subsequent dividend distributions nontaxable."

amount of the distribution exceeded the available earnings and profits of the corporation. After several years in which the company had generated earnings and profits, distributions were made by the corporation with respect to its stock which the shareholder contended were not taxable as dividends because the previous redemption distribution had created a deficit in earnings and profits which could be offset against the earnings and profits generated after the distribution. In holding to the contrary, we stated (p. 1383):

It has been repeatedly held that "deficits" resulting from stock redemptions over and above the earnings and profits, as distinguished from deficits resulting from operating losses, constitute an impairment of capital which does not have to be restored before there can be earnings available for dividend distributions. See *Van Norman Co. v. Welch* (C.C.A., 1st Cir.), 141 Fed. (2d) 99; *F. W. Henninger*, 21 B.T.A. 1235; *Stanley M. Bolster, Executor*, 23 B.T.A. 347; and *Mercantile Bridge Co.*, 2 T.C. 166.

In the *Van Norman Co.* case, *supra*, the court said:

"* * * For tax purposes only impairments of capital caused by losses must be restored out of subsequent earnings before there can be accumulated earnings or profits available for dividends and 'Of course, accumulated earnings or profits available for dividends are not to be diminished in order to restore an impairment or reduction of capital caused by distribution therefrom as distinguished from losses.' "

Petitioners seek to distinguish the *Meyer* case, *supra*, on the grounds that the redemption was held to be essentially equivalent to the distribution of a dividend. While this is a factual distinction in the *Meyer* case and the instant case, in our view the factual distinction does not detract from the *Meyer* case as part of existing law when section 312(a) was enacted.

Petitioners argue strenuously that the question of the creation of a deficit in accumulated earnings and profits by virtue of the distribution in redemption of the minority shareholders' interest in 1962 is not relevant to determining the correctness of their position that no accumulated earnings and profits were available for dividend distribution by Uris Lexington at November 1, 1968. We have difficulty in following petitioners' argument in this regard. Apparently they contend that the current earnings and profits for the years 1963-68 should be added together to arrive at a total positive earnings and profits account for those years and then there should be subtracted from that total the amount of the

1962 distribution in redemption of stock in excess of the amount of such distribution chargeable to the capital account. In this manner petitioners arrive at a negative balance in accumulated earnings and profits as of October 31, 1968. One argument petitioners advance for allowing such an approach is that in the period following the redemption there occurred no event which would have required the computation of Uris Lexington's earnings and profits so that this method is a reasonable approach to determining the status of the accumulated earnings and profits at the time of the distribution in 1969.

In our view this argument of petitioners is totally without merit. This argument is merely another way of arguing that a deficit in earnings and profits can be created by a distribution in redemption of stock. The arguments petitioners make for in effect creating a deficit in earnings and profits by a distribution in redemption of stock, while conceding that under section 312(a) such a deficit cannot be created by a distribution with respect to stock which is not a redemption, are equally without merit. Petitioners argue that remaining stockholders should not be penalized because prospective earnings of the corporation are used to redeem other stockholders' stock. However, generally speaking, and clearly here, the value of the redeemed stock consists of a number of components. Most of the components which form the basis of the value of the stock are related to performance of the corporation and appreciation of its assets prior to the date of redemption. These factors have caused the redeemed stock and the outstanding stock to have a value in excess of the amount paid into the corporation for the stock. The fact that the corporation chooses to borrow the funds with which to redeem the stock and repay the loan with future earnings is immaterial. The redemption could have been made by sale of assets. In either event the remaining shareholders have the same appreciation in the value of stock, though not converted into money as was the appreciation in value of the stock which was redeemed. Where the corporation borrows the money for the redemption and repays the borrowing with earnings, the amount of principal borrowed has no effect on earnings and profits. Earnings and profits are invested in this

manner in the corporation instead of being invested in the corporation in some other manner.

Another argument made by petitioners is that respondent's view places too much emphasis on the timing of the transaction. Petitioners contend that if the redemption had been made in 1968 there would have been no accumulated earnings and profits under respondent's position. This argument assumes, clearly without foundation, that the redemption price in 1968 of the stock would have been the same as in 1962 and that accumulated earnings would have been the same, which is unlikely since at least to the extent of the interest paid on the funds borrowed to make the redemption, they would likely have been more. In any event, timing is always a factor in computing accumulated earnings and profits when a distribution in excess of earnings and profits has previously been made. Petitioners further contend that respondent's view is also contrary to appropriate financial accounting. However, the concept of earnings and profits is a concept of the Internal Revenue Code and differs in significant aspects from appropriate financial accounting. Also, a redemption of stock is in many respects a distribution to the shareholders whose stock is redeemed of unrealized (for purposes of taxation) appreciation in the corporate property. See *Anderson v. Commissioner, supra* at 538–539. There are in many instances differences in business accounting and accounting for purposes of taxation.

In our view, based on the facts here present, Uris Lexington had current and accumulated earnings and profits in 1969 sufficient to cause the entire distribution it made to each petitioner in that year to be taxable to that petitioner as a dividend.

*Decisions will be entered under Rule 155.*